Filed 3/6/15 unmodified opinion attached

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MATTHEW RAYMOND ALLEN et al., | C071710 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201000070097CUCRGDS) |
| v. | |
| CITY OF SACRAMENTO et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 6, 2015, be modified as follows:

On page 13, first line, after the words "conduct, i.e.," delete the words "living temporarily outdoors or living in a tent" and replace them with "occupying camp facilities or using camp paraphernalia," so that the sentence now reads:

1

But their contention fails because the ordinance clearly applied to their conduct, i.e., occupying camp facilities or using camp paraphernalia on private property for more than one consecutive night without a City permit.

On page 14, line 6, after the words "for the first time" insert the words "on appeal," so that the sentence now reads:

In their appellate reply brief, plaintiffs assert for the first time on appeal that the terms "friend," "temporary shelter" and "one consecutive night" in the ordinance are also vague.

This modification does not change the judgment.

The petition for rehearing is denied.

FOR THE COURT:

_____RAYE_____, P. J.

_____HULL_____, J.

_____MAURO_____, J.

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MATTHEW RAYMOND ALLEN et al., | C071710 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201000070097CUCRGDS) |
| v. | |
| CITY OF SACRAMENTO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Shelleyanne W.L. Change, Judge.  Reversed in part and affirmed in part.

Law Office of Mark E. Merin and Mark E. Merin for Plaintiffs and Appellants.

James Sanchez, City Attorney, and Chance L. Trimm, Senior Deputy City Attorney for Defendants and Respondents.

Plaintiffs challenge a City of Sacramento (City) ordinance. Among other things, they assert the ordinance is unconstitutional both on its face and as applied to them. We will reverse a portion of the trial court's order sustaining the City's demurrer. Although plaintiffs fail to meet their appellate burden on most of their claims, they state a cause of action for declaratory relief asserting an as-applied challenge based on equal protection.

A private property owner agreed that plaintiffs -- 22 homeless individuals and two people providing services to the homeless -- could camp on his lot in a light industrial area of the City of Sacramento. City police informed plaintiffs that their camping violated a City ordinance prohibiting extended camping on public or private property without a City permit. When plaintiffs continued to camp on the lot, the police gave them citations on two occasions and removed their camping gear. Plaintiffs brought in other camping gear each time and continued their camping activities. The police ultimately arrested them.

Plaintiffs sued the City, claiming the camping ordinance is unconstitutional and the City enforces the ordinance in a discriminatory manner. The trial court sustained the City's demurrer with leave to amend. Rather than amend the complaint, the parties agreed judgment could be entered against plaintiffs and plaintiffs could appeal.

On appeal, plaintiffs raise many concerns about the plight of homeless individuals in the City. Among other things, they argue homeless individuals are forced to live outside because they lack employment opportunities, mental health treatment, and adequate shelter. But in considering these arguments, we must be mindful of our limited role in this dispute. Our focus must be to determine whether plaintiffs have met their legal burden on appeal, i.e., whether they have stated a cause of action in their first amended complaint. It is not our role to determine appropriate City policy. Thus, as we consider the City's camping ordinance, we may not opine on the wisdom of the policies embodied in such legislation. (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53.) "[A]bsent a constitutional prohibition, the choice among competing policy

2

considerations in enacting laws is a legislative function." (*Ibid;* see also *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1092, fn. 12 (*Tobe*) [arguments regarding the intractable problem of homelessness and the impact of the challenged ordinance on homeless persons should be addressed to legislative bodies, not the courts]; *People v. Kellogg* (2004) 119 Cal.App.4th 593, 605.)

Accordingly, in part I of this opinion, we will address plaintiffs' contentions pertaining to their first cause of action for declaratory judgment. Plaintiffs contend the trial court erred in sustaining the demurrer to their first cause of action because (A) a demurrer to a declaratory relief cause of action must be overruled whenever an actual controversy is alleged, (B) plaintiffs adequately stated a facial void-for-vagueness challenge to the ordinance, and (C) plaintiffs adequately stated an as-applied constitutional challenge to the ordinance based on (1) the Eighth Amendment prohibition against cruel and unusual punishment, (2) the right to travel, (3) equal protection and class-based discrimination, (4) arbitrary and discriminatory enforcement of laws, (5) substantive due process, and (6) protections regarding vague laws.

In part II of this opinion, we will analyze plaintiffs' contention pertaining to their second cause of action for an injunction. Plaintiffs contend the trial court erred in sustaining the demurrer to their second cause of action because their failure to cite "California Civil Code section 526(a)" should not foreclose injunctive relief.

Finally, in part III, we discuss plaintiffs' contention pertaining to their third cause of action for violation of Civil Code section 52.1 [interference or attempt to interfere, by threats, intimidation, or coercion, with exercise of rights]. Plaintiffs contend the trial court erred in sustaining the demurrer to their third cause of action because plaintiffs alleged facts constituting threats and coercion.

Regarding the first cause of action for declaratory judgment, we conclude (A) a general demurrer is proper when the plaintiff does not allege facts sufficient to state a claim; (B) plaintiffs have not stated a facial vagueness challenge because their camping

3

clearly violated the ordinance; and (C) plaintiffs have not stated an as-applied challenge based on cruel and unusual punishment (the ordinance punishes the act of camping and does not punish plaintiffs' homeless status) or the right to travel (the ordinance has only an indirect impact on the right to travel, and the first amended complaint does not allege punishment for exercising the right to travel). But plaintiffs do state an as-applied challenge based on equal protection.

Plaintiffs forfeited their as-applied claims asserting arbitrary and discriminatory enforcement and a violation of substantive due process, because they failed to provide any argument or citation to supporting authority in their opening brief regarding those contentions. And they forfeited their as-applied claim regarding vagueness by failing to explain how the ordinance is vague as applied to them.

Regarding the second cause of action for an injunction, the trial court did not err in sustaining the demurrer because an injunction is not a cause of action. As for the third cause of action for violation of Civil Code section 52.1, the trial court did not err because plaintiffs do not allege City police threatened violence and they do not allege threats, intimidation, or coercion independent of the coercion inherent in their detention and arrest.

We will reverse the judgment with respect to the first cause of action for declaratory judgment asserting an as-applied challenge based on equal protection. We will affirm the judgment in all other respects.

BACKGROUND

Because this case comes to us on a demurrer for failure to state a cause of action, we accept as true the well-pleaded allegations in plaintiffs' first amended complaint. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) We draw the following facts from that complaint.

There are at least 2,600 homeless persons in the City at any given time. Of that number, 1,200 to 1,300 homeless people do not have shelter each night.

4

Plaintiffs are part of a group of homeless men and women who stayed the night at different public and private properties in the City in 2009. City police officers informed plaintiffs that staying overnight at those properties violated the City's camping ordinance and could subject plaintiffs to arrest and loss of their personal property.

Sacramento City Code section 12.52.030 makes it "unlawful and a public nuisance for any person to camp, occupy camp facilities, or use camp paraphernalia in . . . [a]ny public property; or . . . [a]ny private property." A violation of the ordinance is a misdemeanor. (Sac. City Code, ch. 12.52, §§ 12.52.030, 12.52.040.)

The ordinance contains an exception for overnight camping on private residential property by friends or family of the property owner, so long as the owner consents and the overnight camping is limited to not more than one consecutive night. (Sac. City Code, *supra*, at § 12.52.030.)

In addition, the City Manager may issue a temporary permit to allow camping on public or private property in connection with a special event. (Sac. City Code, *supra*, at § 12.52.030.) A special event includes programs operated by the City, youth or school events, marathons or other sporting events, and scouting activities. (*Id.* at § 12.52.050.) The city manager may consider any facts bearing on the sanitary, health, safety, and welfare conditions of the area where the proposed temporary camp or camp facility is to be located in issuing a permit. (*Ibid.*) The city manager may impose conditions on the establishment, maintenance and operation of the camp or camp facility, including conditions relating to security, sanitation facilities, the number of occupants, posting of bonds or deposits, insurance, quiet hours, duration of the permit, and permitted activities on the premises. (Sac. City Code, *supra*, at § 12.52.070.) A permit may be revoked if the city manager determines the maintenance or continuing operation of the camp or camp facilities is adverse to the public health, safety, and welfare. (*Ibid.*)

The camping ordinance states it is intended "to maintain streets, parks and other public and private areas within the city in a clean, sanitary and accessible condition and

5

to adequately protect the health, safety and public welfare of the community, while recognizing that, subject to reasonable conditions, camping and camp facilities associated with special events can be beneficial to the cultural and educational climate in the city." (Sac. City Code, *supra*, at § 12.52.010.) The Sacramento City Council recognized that "[t]he streets and public areas within the city should be readily accessible and available to residents and the public at large. The use of these areas for camping purposes or storage of personal property interferes with the rights of others to use the areas for which they were intended. Such activity can constitute a public health and safety hazard which adversely impacts neighborhoods and commercial areas. Camping on private property without the consent of the owner, proper sanitary measures and for other than a minimal duration adversely affects private property rights as well as public health, safety, and welfare of the city." (*Ibid.*)

The ordinance is not intended "to interfere with otherwise lawful and ordinary uses of public or private property." (Sac. City Code, *supra*, at § 12.52.010.) It does not prohibit or make unlawful "activities of an owner of private property or other lawful user of private property that are normally associated with and incidental to the lawful and authorized use of private property for residential or other purposes" and "activities are expressly authorized by the Planning and Development Code or other laws, ordinances and regulations." (*Id.* at § 12.52.030.)

The complaint alleges the City enacted the camping ordinance to discriminate against homeless persons. It further alleges the City has a policy and practice of dissuading homeless persons from entering the City or, if within the City, to drive them out of the City by selectively enforcing the ordinance against the homeless, even when they are living on private property with the property owner's consent.

Pursuant to a lease agreement, the owner of a fenced lot in a light industrial area of the City agreed in 2009 to allow plaintiffs to live and store personal property at the lot until they qualified for shelter. About 30 people set up tents and stored their property at

6

the lot with the owner's written permission. Portable toilets were also moved onto the property.

On September 2, 2009, City police officers detained all persons at the lot, seized and removed plaintiffs' personal property including tents, sleeping bags and personal items, and cited the detainees for violating the camping ordinance. Alleging they had nowhere else to go, plaintiffs obtained more tents and sleeping bags and remained at the lot.

On September 4, 2009, police officers again detained and cited plaintiffs for violating the camping ordinance. Police seized and removed the additional tents, sleeping bags and personal items at the lot. Once again alleging they had nowhere else to go, plaintiffs obtained more tents, sleeping bags and personal items, and remained at the lot.

On September 12, 2009, police officers arrested plaintiffs for violating the camping ordinance and seized the tents, sleeping bags, tarps and personal items found at the lot. The complaint alleges plaintiffs have had to search for places to sleep on other public or private properties because no shelter was available to them. Plaintiffs fear arrest and the confiscation of their property. Some homeless persons, including one of the plaintiffs, have died while sleeping outdoors.

The first cause of action of plaintiffs' first amended complaint seeks a declaration that the camping ordinance is unconstitutional on its face and also as applied to homeless persons residing on private property in the City with the consent of the owner when no public or private shelter is available to them. Plaintiffs seek a declaration that the ordinance (1) targets and discriminates against the homeless in the same way the ordinance in *Parr v. Municipal Court for Monterey* (1971) 3 Cal.3d 861 (*Parr*) discriminated against "hippies;" (2) criminalizes the status of homelessness which is prohibited under *Robinson v. California* (1962) 370 U.S. 660 [8 L.Ed.2d 758] (*Robinson*); (3) is selectively enforced against the homeless; (4) interferes with the state

7

and federal constitutional right to freedom of travel because the homeless are forced to leave the City at night in order to avoid arrest; (5) deprives homeless persons of equal protection of the laws in that the City only enforces the ordinance against the homeless and their supporters; (6) deprives the homeless who have no access to a public or private shelter of substantive due process of law because they are not permitted to live in the City without the threat of arrest; and/or (7) contains terms which are unconstitutionally vague.

The second cause of action seeks an injunction against the selective enforcement of the camping ordinance, and the third cause of action asserts a violation of Civil Code section 52.1. There was also a fourth cause of action which plaintiffs subsequently agreed to dismiss.

The trial court sustained the City's demurrer to plaintiffs' first, second and third causes of action but granted leave to amend. Rather than filing a second amended complaint, however, plaintiffs agreed judgment could be entered against them in return for the City's agreement that plaintiffs could appeal.

STANDARD OF REVIEW

When, as here, a demurrer to a complaint is sustained with leave to amend and the plaintiffs elect not to amend the complaint, the plaintiffs may test the validity of the order sustaining the demurrer by filing an appeal from the ensuing judgment of dismissal. (*County of Santa Clara v. Atlantic Richfield Co*. (2006) 137 Cal.App.4th 292, 312; *Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 457.)

In reviewing a demurrer order, we independently evaluate the challenged pleading, construing it liberally, giving it a reasonable interpretation, reading it as a whole, and viewing its parts in context. (*Milligan v. Golden Gate Bridge Highway & Transportation Dist*. (2004) 120 Cal.App.4th 1, 5-6 (*Milligan*).) We treat the demurrer as admitting all material facts properly pleaded, but we do not assume the truth of contentions, deductions or conclusions of law. (*Aubry v. Tri-City Hospital Dist., supra,* 2 Cal.4th at pp. 966-967.) We determine de novo whether the factual allegations of the challenged pleading are

8

adequate to state a cause of action under any legal theory. (*Milligan, supra*, 120 Cal.App.4th at p. 6.) The constitutionality of an ordinance is also a question of law for our independent review. (*Garcia v. Four Points Sheraton LAX* (2010) 188 Cal.App.4th 364, 381; *Samples v. Brown* (2007) 146 Cal.App.4th 787, 799.)

The plaintiffs bear the burden of demonstrating that the demurrer was sustained erroneously. (*Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* (2011) 200 Cal.App.4th 1470, 1485.) We will affirm the judgment if proper on any grounds stated in the demurrer, whether or not the trial court acted on that ground. (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

It is the responsibility of the appellant, here the plaintiffs, to support claims of error with meaningful argument and citation to authority. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Badie v. Bank of Am.* (1998) 67 Cal.App.4th 779, 784-785.) When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.) In addition, citing cases without any discussion of their application to the present case results in forfeiture. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862; *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482-483.) We are not required to examine undeveloped claims or to supply arguments for the litigants. (*Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984-985; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 546 [it is not the court's function to serve as the appellant's backup counsel].)

Moreover, we do not consider points raised for the first time in the reply brief absent a showing of good cause for the failure to present them earlier. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10; *Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 (*Neighbours*).) This rule is based on considerations of fairness; withholding a point until the closing brief deprives the

9

opposing party of the opportunity to file a written response unless supplemental briefing is ordered.  (*Neighbours, supra*, 217 Cal.App.3d at p. 335.)

DISCUSSION

I

Plaintiffs assert a number of arguments claiming the trial court erred in sustaining the demurrer on their first cause of action for declaratory judgment.  Plaintiffs contend the trial court erred because (A) a demurrer to a declaratory relief cause of action must be overruled whenever an actual controversy is alleged, (B) plaintiffs adequately stated a facial void-for-vagueness challenge to the camping ordinance, and (C) plaintiffs adequately stated an as-applied constitutional challenge to the ordinance based on (1) the Eighth Amendment prohibition against cruel and unusual punishment, (2) the right to travel, (3) equal protection and class-based discrimination, (4) arbitrary and discriminatory enforcement of laws, (5) substantive due process, and (6) protections regarding vague laws.  We address each argument in turn.

A

Plaintiffs claim the trial court should not have sustained the demurrer on their first cause of action for declaratory judgment because plaintiffs established the existence of an actual controversy.  They claim a demurrer to a declaratory relief cause of action must be overruled whenever an actual controversy is alleged.  We disagree.

Plaintiffs rely on *Ludgate Ins. Co. v. Lockheed Martin Corp*. (2000) 82 Cal.App.4th 592 and *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, but those cases are inapposite as they involved orders disposing of a declaratory relief cause of action following the grant of judgment on the pleadings or the sustaining of a demurrer without leave to amend.  (*Ludgate, supra,* 82 Cal.App.4th at pp. 596-597; *Qualified Patients, supra,* 187 Cal.App.4th at p. 741.)  Unlike in those cases, here the trial court sustained the demurrer with leave to amend but plaintiffs elected not to amend their complaint.

10

Nonetheless, even where the trial court sustains a demurrer without leave to amend, we do not reverse the judgment if the trial court's legal rulings are correct or when a different result would not be obtained.  (*Taxpayers for Improving Public Safety v. Schwarzenegger* (2009) 172 Cal.App.4th 749, 769; *Coffman Specialties, Inc. v. Department of Transportation* (2009) 176 Cal.App.4th 1135, 1144; *Helmer v. Miller* (1993) 19 Cal.App.4th 1565, 1569; *Teachers Management & Inv. Corp. v. City of Santa Cruz* (1976) 64 Cal.App.3d 438, 449; *Tiburon v. Northwestern P. R*. Co. (1970) 4 Cal.App.3d 160, 172, fn. 5; *Peters v. State of California* (1987) 188 Cal.App.3d 1421, 1424.)  A general demurrer to a declaratory relief cause of action is proper when the plaintiff does not allege facts sufficient to state the derivative claim.  (Code Civ. Proc., § 430.10, subd. (e); *Ball v. FleetBoston Financial Corp*. (2008) 164 Cal.App.4th 794, 800.)  Because plaintiffs' declaratory judgment cause of action is based on their facial and as-applied challenges, the cause of action is dependent on the sufficiency of those claims.

B

Plaintiffs next contend the trial court should not have sustained the demurrer on their first cause of action for declaratory judgment because they adequately stated a facial void-for-vagueness challenge to the camping ordinance.

A facial challenge to the constitutional validity of an ordinance considers only the text of the ordinance, not its application to the plaintiffs' particular circumstances.  (*Tobe, supra,* 9 Cal.4th at p. 1084.)  Our analysis begins with the strong presumption that the ordinance is constitutionally valid.  (*Id.* at p. 1107; *City of San Diego v. Boggess* (2013) 216 Cal.App.4th 1494, 1503 (*City of San Diego*).)  We resolve all doubts in favor of the validity of the ordinance.  (*City of San Diego, supra,* 216 Cal.App.4th at p. 1503.)  Unless conflict with a provision of the state or federal Constitution is clear and unmistakable, we must uphold the ordinance.  (*Ibid.*; *Samples v. Brown, supra,* 146 Cal.App.4th at p. 799 [same].)  Plaintiffs bear the burden of demonstrating that the ordinance is

11

unconstitutional in all or most cases. (*City of San Diego, supra,* 216 Cal.App.4th at p. 1504.)

Protections against vagueness are based on due process. To satisfy the constitutional requirement of due process of law, a penal statute must (1) be sufficiently definite to provide adequate notice of the conduct proscribed, and (2) provide sufficiently definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement. (*Tobe, supra*, 9 Cal.4th at pp. 1106-1107.) However, no more than a reasonable degree of certainty is required. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1117.) Thus, a statute is not void for uncertainty if any reasonable and practical construction can be given to its language. (*Tobe, supra*, 9 Cal.4th at p. 1107.) And " '[o]ften the requisite standards of certainty can be fleshed out from otherwise vague statutory language by reference to any of the following sources: (1) long established or commonly accepted usage; (2) usage at common law; (3) judicial interpretations of the statutory language or of similar language; [and] (4) legislative history or purpose. [Citation.]' " (*Ewing v. City of Carmel-By-The-Sea* (1991) 234 Cal.App.3d 1579, 1594; see also *Samples v. Brown, supra*, 146 Cal.App.4th at pp. 802-804.)

Plaintiffs claim the camping ordinance is unconstitutionally vague on its face because it does not contain standards to protect against arbitrary and discriminatory enforcement.[1] But their contention fails because the ordinance clearly applied to their

---

[1] In their reply brief, plaintiffs assert for the first time that the ordinance is facially invalid because it violates equal protection, substantive due process, the prohibition against cruel and unusual punishment, and the right to travel. Plaintiffs do not explain why they did not assert these facial contentions in their opening brief. Accordingly, we limit our review to the claim that the ordinance is facially invalid because it is unconstitutionally vague. (*Garcia v. McCutchen, supra,* 16 Cal.4th at p. 482, fn. 10; *Neighbours, supra,* 217 Cal.App.3d at p. 335, fn. 8.) In any event, a facial challenge on the additional grounds raised in the reply brief appears to lack merit. The ordinance, on

12

conduct, i.e., living temporarily outdoors or living in a tent on private property for more than one consecutive night without a City permit.  (Sac. City Code, *supra*, at §§ 12.52.020, 12.52.030; *Hoffman Estates v. Flipside, Hoffman Estates, Inc*. (1982) 455 U.S. 489, 495 [71 L.Ed.2d 362, 369] [a facial challenge on vagueness grounds cannot succeed where the plaintiff engaged in some conduct that is clearly proscribed by the statute]; *Tobe, supra*, 9 Cal.4th at pp. 1095-1096 [same]; *Joel v. City of Orlando* (11th Cir. 2000) 232 F.3d 1353, 1359 [same].)  On its face, the ordinance makes it unlawful for a person to "camp," occupy "camp facilities," or use "camp paraphernalia" in any "public property" or any "private property."  (Sac. City Code, *supra*, at § 12.52.030.)  The word "camp" means "to place, pitch or occupy camp facilities; to live temporarily in a camp facility or outdoors; to use camp paraphernalia."  (Sac. City Code, *supra*, at § 12.52.020.) " 'Camp facilities' include, but are not limited to, tents, huts, vehicles, vehicle camping outfits or temporary shelter."  (*Ibid*.)  " 'Camp paraphernalia' includes, but is not limited to, bedrolls, tarpaulins, cots, beds, sleeping bags, hammocks or cooking facilities and similar equipment."  (*Ibid*.)  "Public property" means all public property including streets, sidewalks, alleys, improved or unimproved land, and parks.  (*Ibid*.)[2]  "Private

---

its face, does not restrict travel into or out of the City, does not discriminate based on residency or duration of residency, and does not disclose the intent to discriminate against the homeless.  Unlike the "Declaration of Urgency" made by the City Council in *Parr, supra,* 3 Cal.3d 861, here plaintiffs do not allege that the City made an official pronouncement to discriminate against the homeless.

[2]  Pursuant to California Rules of Court, rule 8.254, plaintiffs filed a letter notifying us of *Desertrain v. City of Los Angeles* (9th Cir. 2014) 754 F.3d 1147.  That case involved a facial vagueness challenge to a Los Angeles ordinance which prohibited the "use [of] a vehicle parked or standing upon any City street, or upon any parking lot owned by the City of Los Angeles and under the control of the City of Los Angeles or under control of the Los Angeles County Department of Beaches and Harbors, as living quarters either overnight, day-by-day, or otherwise."  (*Id.* at p. 1149.)  The terms the Ninth Circuit Court of Appeal found unconstitutionally vague in the ordinance at issue in *Desertrain v. City of Los Angeles* are not found in the ordinance challenged in this case.  (*Id.* at pp. 1155-1156.)

13

property" means all private property including improved or unimproved land. (*Ibid*.) The ordinance does not prohibit overnight camping on private residential property by friends or family of the property owner, so long as the owner consents and the overnight camping is limited to not more than one consecutive night. (Sac. City Code, *supra*, at § 12.52.030.)

In their appellate reply brief, plaintiffs assert for the first time that the terms "friend," "temporary shelter" and "one consecutive night" in the ordinance are also vague. We do not consider those contentions because plaintiffs did not raise them in their opening brief and there is no explanation for the delay in presenting those claims. (*Garcia v. McCutchen, supra,* 16 Cal.4th at p. 482, fn. 10; *Neighbours, supra,* 217 Cal.App.3d at p. 335, fn. 8.) We also do not consider plaintiffs' claim that the phrase "to live temporarily . . . outdoors" in the ordinance is vague because plaintiffs raised it for the first time on appeal at oral argument. (*Santa Clara County Local Transp. Auth. v. Guardino* (1995) 11 Cal.4th 220, 232, fn. 6.)

The trial court properly sustained the demurrer to the first cause of action based on a facial challenge to the ordinance on vagueness grounds.

C

Plaintiffs claim the trial court should not have sustained the demurrer on their first cause of action for declaratory judgment because they adequately stated an as-applied constitutional challenge to the camping ordinance.

An as-applied challenge asserts that the manner of enforcement against an individual or class of individuals or the circumstances in which the ordinance is applied is unconstitutional. (*Tobe, supra*, 9 Cal.4th at p. 1089.) "It contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the . . . ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right. [Citations.] When a criminal defendant claims that a facially valid statute or ordinance

14

has been applied in a constitutionally impermissible manner to the defendant, the court evaluates the propriety of the application on a case-by-case basis to determine whether to relieve the defendant of the sanction." (*Id*. at p. 1084.) As with a facial challenge, we presume the ordinance is constitutional and must uphold it "unless its unconstitutionality 'clearly, positively and unmistakably appears.' " (*Hale v. Morgan* (1978) 22 Cal.3d 388, 404.)

Specifically, plaintiffs' as-applied challenge asserts arguments based on (1) the Eighth Amendment prohibition against cruel and unusual punishment, (2) the right to travel, (3) equal protection and class-based discrimination, (4) arbitrary and discriminatory enforcement of laws, (5) substantive due process, and (6) protections regarding vague laws. [3]

1

Plaintiffs claim the camping ordinance, as applied to them, violated their Eighth Amendment right to be free from cruel and unusual punishment. They say the ordinance violates the Eighth Amendment by "criminalizing the homeless condition."

The Eighth Amendment prohibits the infliction of cruel and unusual punishment in three ways: it limits the type of punishment that can be imposed on those convicted of crimes; it proscribes punishment grossly disproportionate to the severity of the crime; and it imposes substantive limits on what can be made criminal. (*Ingraham v. Wright* (1977) 430 U.S. 651, 667 [51 L.Ed.2d 711, 727-728].) The last limitation, which is at issue here, is "to be applied sparingly." (*Ibid*.)

---

[3] The trial court did not address plaintiffs' right to travel, substantive due process and vagueness claims because the parties did not explicitly discuss those claims. Nonetheless, plaintiffs assert the right to travel, substantive due process and vagueness claims in their as-applied challenge on appeal. The City does not argue that plaintiffs are now barred from asserting the claims.

15

In *Robinson, supra,* 370 U.S. 660, the United States Supreme Court struck down a California statute which made it unlawful to be addicted to the use of narcotics. (*Id.* at pp. 660, fn. 1, 667 [8 L.Ed.2d at p. 759, fn. 1, 763].) The Supreme Court recognized that the State can regulate the use of narcotics. (*Id.* at p. 664 [8 L.Ed.2d at p. 761].) But it said the challenged statute and its construction by the state courts criminalized the status of narcotic addiction, irrespective of whether the defendant ever used or possessed any narcotic within the state or engaged in any antisocial behavior there. (*Id.* at p. 666 [8 L.Ed.2d at p. 763].) The Supreme Court likened the challenged statute to one that made it a crime for a person to be mentally ill or a leper. (*Ibid.*)

Under *Robinson*, criminalizing the status of being addicted to narcotics violates the Eighth Amendment, but punishing the conduct of using narcotics, even by a narcotics addict, is not impermissible punishment for status. (*Tobe, supra*, 9 Cal.4th at p. 1105.)

About six years after *Robinson*, the United States Supreme Court considered an Eighth Amendment challenge to a Texas statute that made it a crime to " 'get drunk or be found in a state of intoxication in any public place.' " (*Powell v. Texas* (1968) 392 U.S. 514, 517, 532 [20 L.Ed.2d 1254, 1258, 1267] (*Powell*).) Although the defendant was a chronic alcoholic, a plurality of the Supreme Court upheld the statute because it punished behavior (being drunk in public) that society had an interest in preventing; it did not punish the defendant's status. (*Ibid.*) The plurality refused to read *Robinson* as finding an Eighth Amendment violation based on an involuntary condition or a condition occasioned by compulsion. (*Id.* at p. 533 [20 L.Ed.2d at p. 1268].) The plurality said such an interpretation of *Robinson* would lead to a slippery slope: "it is difficult to see any limiting principle that would serve to prevent this Court from becoming, under the aegis of the Cruel and Unusual Punishment Clause, the ultimate arbiter of the standards of criminal responsibility . . . ." (*Ibid.*) "If Leroy Powell cannot be convicted of public intoxication, it is difficult to see how a State can convict an individual for murder, if that individual, while exhibiting normal behavior in all other respects, suffers from a

16

'compulsion' to kill . . . ." (*Id.* at p. 534) The plurality said "[t]raditional common-law concepts of personal accountability and essential considerations of federalism" led them to reject the proposition that criminal penalties may not be imposed for a condition the defendant was powerless to change. (*Id.* at pp. 533-535 [20 L.Ed.2d at pp. 1268-1269]; *Lehr v. City of Sacramento* (E.D.Cal. 2009) 624 F.Supp.2d 1218, 1231 [expressing the same concerns in a case challenging the constitutionality of Sacramento's ordinance]; *Joyce v. City & County of San Francisco* (N.D.Cal. 1994) 846 F.Supp. 843, 858 [same in a case challenging the City of San Francisco's actions in connection with the homeless].) The *Powell* plurality also said it could not conclude the defendant suffered from an irresistible compulsion to drink and to get drunk in public. (*Powell, supra,* 392 U.S. at p. 535 [20 L.Ed.2d at p. 1269].)

In his concurring opinion in *Powell*, Justice White said it is not a crime to drink alcohol when the defendant has an irresistible compulsion to drink. (*Powell, supra,* 392 U.S. at pp. 548-549, 552, fn. 4 [20 L.Ed.2d at pp. 1276, 1278, fn. 4].) However, Justice White concluded the conviction should stand because there was no evidence the defendant could not stay off the streets on the night in question or that his extreme drunkenness sufficiently deprived him of his faculties that night. (*Id.* at pp. 552-554 [20 L.Ed.2d at pp. 1278-1279].)

Some courts have interpreted *Robinson* and *Powell* as holding that the Eighth Amendment prohibits punishment of an act which is derivative of a person's status or involuntary condition, i.e., that it violates the Eighth Amendment to punish an act which is an unavoidable consequence of a person's status. (*Pottinger v. Miami* (S.D. Fla. 1992) 810 F.Supp. 1551, 1562-1565 (*Pottinger*) [punishing the homeless for harmless acts they are forced to perform in public because of their involuntary condition of being homeless is cruel and unusual]; *Jones v. City of L.A.* (9th Cir. 2006) 444 F.3d 1118, 1135-1137, opinion vacated following settlement in *Jones v. City of L.A.* (9th Cir. 2007) 505 F.3d 1006 [the Eighth Amendment prohibits the state from punishing a person for the

17

unavoidable consequences of being involuntarily homeless, i.e., sitting, lying down or sleeping in a public place].)

But being homeless is not necessarily equivalent to an involuntary condition or status. (*Tobe, supra*, 9 Cal.4th at p. 1105 [homelessness is not readily classified as a status]; *Lehr v. City of Sacramento, supra,* 624 F.Supp.2d at p. 1222 [no generalization can describe the diverse population of homeless people in Sacramento]; *Joyce v. City & County of San Francisco, supra*, 846 F.Supp. at pp. 857-858 [as an analytical matter, homelessness is not readily classified as a status].) What constitutes a status "might elude perfect definition," but factors such as the involuntary acquisition of the characteristic (including whether the characteristic was present at birth) and the degree to which a person has control over that characteristic determine whether a characteristic is a status. (*Tobe, supra*, 9 Cal.4th at p. 1105.)

In *Tobe*, the California Supreme Court rejected the plaintiffs' Eighth Amendment claim because it was not shown that the plaintiffs had no alternative to homelessness, to the conduct that led them to homelessness, or to the violations under the ordinance. (*Tobe, supra*, 9 Cal.4th at pp. 1105-1106.) The Supreme Court reached that conclusion despite evidence that on any given night at least 2,500 homeless persons in the city did not have shelter beds available to them. (*Id.* at p. 1083.)

Here, the first amended complaint does not allege facts indicating that plaintiffs' homelessness is a status. It alleges that the homeless plaintiffs had no shelter available to them when City police officers detained and arrested them for violating the ordinance, but it does not allege why plaintiffs had no shelter. (See *Joyce v. City & County of San Francisco, supra*, 846 F.Supp. at p. 857 [refusing to find a status based on the discretionary acts of the city in failing to provide sufficient housing for the homeless]; *Lehr v. City of Sacramento, supra*, 624 F.Supp.2d at p. 1232 [same].) Plaintiffs elected not to file a second amended complaint.

18

Other courts have declined to interpret *Robinson* and *Powell* as holding that the Eighth Amendment bars punishment of an act derivative of a person's status. (*Joyce v. City & County of San Francisco, supra*, 846 F.Supp. at pp. 856-857 [extending Eighth Amendment protection to acts derivative of status is a dubious extension of *Robinson* and *Powell*, and questionable in light of concerns implicating federalism and the proper role of the court in such adjudications]; *Lehr v. City of Sacramento, supra,* 624 F.Supp.2d at pp. 1231-1232 [disagreeing with *Jones v. City of L.A., supra,* 444 F.3d 1118].) In fact, the California Supreme Court said *Robinson* and *Powell* did not hold that the Eighth Amendment prohibits punishment for acts derivative of a person's status. (*Tobe, supra*, 9 Cal.4th at p. 1105.)

While the Court in *Robinson* observed that narcotic addiction is an illness which may be contracted innocently or involuntarily, it did not say involuntariness made narcotic addiction a status for which a person cannot constitutionally be punished. (*Robinson, supra*, 370 U.S. at p. 667 [8 L.Ed.2d at p. 763].) The Court focused instead on whether the defendant committed a prohibited act. (*Id.* at p. 667 [8 L.Ed.2d at p. 763].) That is our focus too. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Sacramento's ordinance punishes the acts of camping, occupying camp facilities, and using camp paraphernalia, not homelessness. (Sac. City Code, *supra*, at § 12.52.030; *Lehr v. City of Sacramento, supra,* 624 F.Supp.2d at p. 1231.) The ordinance is distinguishable from the statute in *Robinson,* which criminalized the status of being addicted to narcotics and did not require any act by the defendant. (*Robinson, supra*, 370 U.S. at p. 666 [8 L.Ed.2d at p. 763].) Because the Eighth Amendment does not prohibit the punishment of acts (*Tobe, supra*, 9 Cal.4th at p. 1105; *Lehr v. City of Sacramento, supra,* 624 F.Supp.2d at pp. 1232, 1234; *People v. Kellogg, supra,* 119 Cal.App.4th at pp. 596, 602-604), plaintiffs' challenge based on cruel and unusual punishment lacks merit.

19

Plaintiffs also claim the ordinance, as applied to them, infringes on their constitutional right to travel.

The right to freedom of travel is constitutionally protected. (*Tobe, supra,* 9 Cal.4th at pp. 1096-1100.) Even so, our state courts have found a violation of the constitutional right of intrastate travel only when there is a direct restriction on the right to travel, such as where a parent is ordered to move to another county as a condition of continued custody of a child. (*Id.* at p. 1101.) Otherwise lawful ordinances that have an indirect or incidental impact on the right to travel and do not discriminate among classes of persons by penalizing the exercise of the right to travel are not constitutionally impermissible. (*Id.* at p. 1100.)

While the camping ordinance might discourage some homeless persons from traveling into the City, it does not directly restrict the right to travel. (*Tobe, supra*, 9 Cal.4th at p. 1102 [an ordinance that bans camping and storing personal possessions on public property does not directly impede the right to travel]; *Sanchez v. City of Fresno* (E.D. Cal. 2012) 914 F.Supp.2d 1079, 1109-1111 (*Sanchez*) [dismissing violation of right to travel claim even though the complaint alleged defendants' policies singled out the homeless; seizing and destroying the property of homeless persons had an incidental impact on travel]; *Johnson v. City of Dallas* (N.D. Texas 1994) 860 F.Supp. 344, 346, 354, reversed on another ground in *Johnson v. City of Dallas* (5th Cir. 1995) 61 F.3d 442 [ordinances that prohibit sleeping in public space do not implicate the right to travel].) The ordinance does not bar anyone from entering into or leaving the City.

Plaintiffs nevertheless claim that homeless persons are effectively prevented from traveling to Sacramento. They also allege, however, that they reside in the City, indicating that the camping ordinance did not bar their entry into the City if they traveled there. While laws that use a classification that serves to penalize the exercise of the right to travel are unconstitutional (*Sanchez, supra,* 914 F.Supp.2d at p. 1109), the first

amended complaint does not allege the homeless plaintiffs were punished because they exercised their right to travel to Sacramento. The first amended complaint alleges plaintiffs were penalized for illegal camping.

Plaintiffs also complain that the City prevented them from remaining in particular areas within the City. However, the right to travel does not give plaintiffs the right to live or stay where they want. (*Tobe, supra*, 9 Cal.4th at p. 1103; see also *Davison v. City of Tucson* (D.Ariz. 1996) 924 F.Supp. 989, 993 [right to travel is not implicated where homeless plaintiffs do not seek to travel anywhere and seek only to remain in the city].) And the City has no constitutional obligation to provide homeless persons with accommodations to facilitate their exercise of the right to travel. (*Tobe, supra*, 9 Cal.4th at p. 1103.)

In addition, unlike the state law challenged in *Attorney General of N.Y. v. Soto-Lopez* (1986) 476 U.S. 898, 905 [90 L.Ed.2d 899, 907], Sacramento's ordinance does not distinguish between residents and non-residents or on the basis of the duration of residency, classifications which have been held to violate the right to travel. (*Tobe, supra*, 9 Cal.4th at p. 1101 [ordinance was nondiscriminatory in right to travel context because it applied to residents and nonresidents alike].) Plaintiffs assert we should not consider the California Supreme Court's analysis in *Tobe, supra*, 9 Cal.4th 1069, because the ordinance in that case did not ban camping on private property. But the Supreme Court's reasoning was not based on whether the ban applied to public or private property. (*Id.* at pp. 1096-1104.)

Plaintiffs also cite *Pottinger, supra,* 810 F.Supp. 1551. The district court in that case held the city's enforcement of ordinances, such as those for loitering and for obstructing the sidewalk, significantly burdened the right of the homeless to travel. (*Id.* at pp. 1580-1581.) Subjecting the city's enforcement activities to strict scrutiny, the district court concluded the city's interest in maintaining public areas and promoting tourism and business in its downtown area was not compelling, and its actions were not

21

narrowly tailored to achieve its objective of preventing health hazards. (*Id.* at pp. 1581-1582.)

*Pottinger* is not controlling for a number of reasons. The ordinances at issue in *Pottinger* were broader in scope than the ordinance at issue in this case. (*Pottinger, supra*, 810 F.Supp. at pp. 1554-1555 [homeless persons were punished for sleeping, eating, standing and congregating in public places].) In addition, the cases cited in *Pottinger* involved the grant or denial of benefits based on past residency or duration of residency or laws that barred or expressly regulated travel. (*Pottinger, supra,* 810 F.Supp. at pp. 1578-1580.) Such measures, which have been found to infringe on the fundamental right to travel, are not found in Sacramento's ordinance. Moreover, *Pottinger* has been rejected by other courts. (*Sanchez, supra,* 914 F.Supp.2d at p. 1111 [the bulk of authority has rejected or declined to follow *Pottinger*'s right to travel holding in cases concerning policies designed to prevent homeless persons from erecting shelters and/or leaving their belongings in particular places]; *Davison v. City of Tuscon, supra*, 924 F.Supp. at p. 994 [*Pottinger* has been rejected in at least four other cases]; *Joyce v. City & County of San Francisco, supra,* 846 F.Supp. at pp. 860-861 [refusing to follow *Pottinger*].) And we are not bound to follow the decisions of lower federal courts. (*People v. Crittenden* (1994) 9 Cal.4th 83, 120, fn. 3.)

We conclude the first amended complaint does not state a cause of action based on the infringement of plaintiffs' right to travel because the ordinance has only an indirect impact on the right to travel and the first amended complaint does not allege plaintiffs were punished for exercising their right to travel.

3

Plaintiffs next claim the ordinance, as applied to them, violated their right to equal protection of the laws and to be free from class-based discrimination.

Equal protection under the federal and California Constitutions requires equal treatment of persons similarly situated. (*City of Cleburne v. Cleburne Living Center, Inc.*

(1985) 473 U.S. 432, 439 [87 L.Ed.2d 313, 320] (*Cleburne*); *Brown v. Merlo* (1973) 8 Cal.3d 855, 861.) Even when a law is nondiscriminatory on its face, equal protection is violated if the law is applied in a manner that discriminates against a particular group. (*U. S. Dept. of Agriculture v. Moreno* (1973) 413 U.S. 528, 534-535 [37 L.Ed.2d 782, 788]; *Joyce v. City & County of San Francisco, supra*, 846 F.Supp. at p. 858 ["a neutral law found to have a disproportionately adverse effect upon a minority classification will be deemed unconstitutional only if that impact can be traced to a discriminatory purpose"].)

"[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." (*U. S. Dept. of Agriculture v. Moreno, supra,* 413 U.S. at pp. 534-535 [37 L.Ed.2d at p. 788], italics omitted; *Parr, supra,* 3 Cal.3d at pp. 868, 864-868 [equal protection clause requires statutory classifications to be related to permissible purposes].) Even under the more lenient rational relationship test, discriminatory animus toward a group is not a valid state objective. (*Cleburne, supra,* 473 U.S. at pp. 446-447 [87 L.Ed.2d at p. 325] [irrational prejudice against the "mentally retarded"]; *U. S. Dept. of Agriculture v. Moreno, supra,* 413 U.S. at pp. 534-535 [37 L.Ed.2d at p. 788] [discrimination against "hippies"].)

The first amended complaint alleges the City selectively enforces the camping ordinance against homeless persons and those non-homeless persons who support the right of the homeless to be in the City. We must read those factual allegations liberally and assume their truth on a demurrer. (*Aubry v. Tri-City Hospital Dist., supra,* 2 Cal.4th at pp. 966-967; *Milligan, supra,* 120 Cal.App.4th at pp. 5-6.) Contrary to the City's assertion, the California Supreme Court in *Tobe, supra,* 9 Cal.4th 1069 did not decide what a plaintiff must plead in order to state an equal protection claim. (*Id.* at p. 1080, fn. 1.) Although the court in *Tobe* indicated that the Tobe plaintiffs "did not clearly allege" an as-applied challenge (*id.* at p. 1083), that was in a completely different

23

procedural posture. In those consolidated actions, the Zuckernick matter involved persons charged with violating an ordinance who demurred unsuccessfully to the criminal complaint and then filed a writ petition to compel the trial court to sustain their demurrers. (*Id.* at pp. 1081-1082.) The Supreme Court held the procedural posture of that action precluded an as-applied challenge. (*Id.* at p. 1083.) The Tobe matter involved persons who challenged enforcement of an ordinance by petition for writ of mandate and appealed the trial court's order. (Id. at pp. 1081-1082.) The Supreme Court held the Tobe plaintiffs did not clearly allege an as-applied challenge or seek relief from specific allegedly impermissible applications of the ordinance. (*Id.* at p. 1083.) Unlike in *Tobe*, the plaintiffs in this case filed a civil complaint asserting an as-applied challenge, not a petition for writ of mandate or a demurrer to a criminal complaint.

Here, we conclude the allegations are sufficient to state a cause of action for declaratory relief asserting an as-applied challenge based on equal protection. (*Murgia v. Municipal Court for Bakersfield Judicial Dist.* (1975) 15 Cal.3d 286, 301 [allegation of deliberate practice of discriminatory enforcement of criminal laws against members of a particular labor organization is sufficient to support equal protection clause claim]; *Ashbaucher v. City of Arcata* (N.D.Cal., August 19, 2010, No. CV 08-2840 MHP (NJV)) 2010 U.S. Dist. Lexis 126627, pp. *47-48 [complaint alleging selective enforcement of ordinances against the homeless states an equal protection claim]; *Anderson v. City of Portland* (D.Or., July 31, 2009, No. 08-1447-AA) 2009 U.S. Dist. Lexis 67519, p. *8 [same].)[4] We need not, and do not, determine whether plaintiffs can ultimately prevail on this cause of action. (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496.)

---

[4] We may cite and rely on unpublished federal district court decisions as persuasive authority. (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 717, fn. 13.)

24

Plaintiffs further claim the camping ordinance, as applied to them, violated their right to be free from arbitrary and discriminatory enforcement. But they do not explain why; they merely cite *City of Chicago v. Morales* (1999) 527 U.S. 41 [144 L.Ed.2d 67], and *Long Beach Area Peace Network v. City of Long Beach* (2009) 574 F.3d 1011, without further argument or explanation.[5] Accordingly, the undeveloped claim is forfeited. (*Nelson v. Avondale Homeowners Assn., supra,* 172 Cal.App.4th at p. 862; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [we need not reach issues presented without argument and we will not develop the appellants' arguments for them].)

5

In addition, plaintiffs claim the ordinance, as applied to them, violated their right to substantive due process. But once again, they do not provide any further explanation in their opening brief. Accordingly, the contention is forfeited for failure to support it with argument or citation to authority. (*Okasaki v. City of Elk Grove, supra,* 203 Cal.App.4th at p. 1045, fn. 1; *Keyes v. Bowen, supra,* 189 Cal.App.4th at p. 656.) Although plaintiffs made belated arguments relating to substantive due process for the first time in their reply brief, we do not consider those arguments because plaintiffs do not explain the delayed presentation of those arguments. (*Garcia v. McCutchen, supra,* 16 Cal.4th at p. 482, fn. 10; *Neighbours, supra,* 217 Cal.App.3d at p. 335, fn. 8.)

---

[5] In their reply brief, plaintiffs cite *Sanchez, supra,* 914 F.Supp.2d 1079, but that case is inapposite. Unlike in *Sanchez,* the applicable pleading in this case does not allege that the City placed plaintiffs in a situation of known danger with deliberate indifference to their safety. Moreover, plaintiffs did not argue in the trial court that the first amended complaint states a substantive due process claim based on the "danger creation" doctrine. (*Sanchez, supra,* 914 F.Supp.2d at pp. 1101-1102 [discussing "danger creation" doctrine].)

6

Plaintiffs claim the ordinance, as applied to them, violated their right to be free from vague laws.  Once again, however, they forfeited this claim by failing to explain how the ordinance is vague as applied to them.  (*Nelson v. Avondale Homeowners Assn., supra,* 172 Cal.App.4th at p. 862; *Tilbury Constructors, Inc. v. State Comp. Ins. Fund, supra,* 137 Cal.App.4th at pp. 482-483.)  The claim also fails on the merits, because plaintiffs' conduct clearly violated the ordinance.  The ordinance prohibits placing or occupying tents on any private property for more than one consecutive night without a City permit.  (Sac. City Code, *supra*, at § 12.52.030.)  The first amended complaint alleges that plaintiffs "continued to live" at a privately owned lot where they set up tents for several days.

II

Plaintiffs argue the trial court erred in sustaining the demurrer to the second cause of action for an injunction.  They say their failure to cite "California Civil Code section 526(a)" should not foreclose their ability to seek injunctive relief.  We assume they intended to reference Code of Civil Procedure section 526, subdivision (a).

In any event, we conclude the trial court did not err.  The second cause of action seeks an order enjoining the enforcement of the ordinance.  Injunctive relief is a remedy, not a cause of action.  (*Roberts v. Los Angeles County Bar Assn*. (2003) 105 Cal.App.4th 604, 618; *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1159.)  A cause of action must exist before a court may grant a request for injunctive relief.  (*County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 973; *City of South Pasadena v. Department of Transportation* (1994) 29 Cal.App.4th 1280, 1293 [" 'A permanent injunction is merely a remedy for a proven cause of action.  It may not be issued if the underlying cause of action is not established.' "]; *Camp v. Board of Supervisors* (1981) 123 Cal.App.3d 334, 356.)

26

Although the order sustaining the demurrer was proper because an injunction is not a cause of action, plaintiffs may still obtain injunctive relief if they prevail on a cause of action. (6 Witkin, California Procedure (5th ed. 2008) Provisional Remedies, § 331, pp. 275-276; see, e.g., *Attorney General of N.Y. v. Soto-Lopez, supra*, 476 U.S. at p. 901 [90 L.Ed.2d at p. 904].)

III

Plaintiffs also contend the first amended complaint states a cause of action for violation of Civil Code section 52.1.[6] Section 52.1, also known as the Tom Bane Civil Rights Act, authorizes an action for injunctive and other equitable relief where a person, whether or not acting under color of law, interferes or attempts to interfere, "by threat, intimidation, or coercion," with the exercise or enjoyment by any individual or individuals of rights secured by state or federal law. (§ 52.1, subd. (a).)

We begin by noting what plaintiffs do not assert. The first amended complaint does not allege the use of excessive or unreasonable force by the police, and plaintiffs do not contend on appeal that this is an excessive force case. Plaintiffs also do not claim on appeal that the first amended complaint alleges any intimidation by the City.

Rather, plaintiffs argue the first amended complaint alleges "threats" within the meaning of section 52.1. Plaintiffs point to the allegations in paragraphs 4 and 10 of the first amended complaint that City police officers threatened to arrest homeless persons who had gathered at two locations other than the lot plaintiffs leased in 2009 and also threatened to confiscate their property. Even if we assume those allegations apply to plaintiffs, however, "[s]peech alone is not sufficient to support an action brought pursuant to [section 52.1] subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group

---

[6] Undesignated statutory references are to the Civil Code.

27

of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." (§ 52.1, subd. (j).) While plaintiffs say in their reply brief they had a reasonable belief violence would result should they disobey the orders of the police officers, the first amended complaint does not allege a police officer threatened any plaintiff with violence.

In addition, plaintiffs argue the first amended complaint sufficiently alleges "coercion" because City police officers arrested plaintiffs and an arrest is inherently coercive. The first amended complaint alleges City police officers "forcibly detained" persons at the lot where plaintiffs lived, "forcibly detained and cited plaintiffs on the property . . . for illegal camping," arrested plaintiffs for violating the ordinance, "coercively violated plaintiffs' rights under the 4th and 14th Amendments to the U.S. Constitution (namely, unreasonable search and seizure, violation of due process, and violation of equal protection of the laws)" and "coercively interfered with the exercise and/or enjoyment of rights secured by the Constitution of the state of California, Article 1, §§ 1, 7 and 13 (namely, unreasonable search and seizure, deprivation of life, liberty and property, without due process of law)." Plaintiffs say the actions of the police are inherently coercive because of their "unique position of trust" in society.

There are two distinct elements for a section 52.1 cause of action. A plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion. (*Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 334 [section 52.1 requires an attempted or completed act of interference with a legal right, accompanied by a form of coercion]; *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 958 (*Shoyoye*) [incidental interference brought about by negligent conduct is not sufficient].) The California Supreme Court has not addressed whether an unlawful detention or arrest, without more, is sufficient to satisfy both elements of

28

section 52.1. While the California Supreme Court said in *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820 (*Venegas*) that the plaintiffs in that case stated a section 52.1 cause of action based on an unreasonable search and seizure, the only issue the Supreme Court considered was whether section 52.1 required a showing that the defendants acted with discriminatory animus. (*Id.* at pp. 841, 843 ["All we decide here is that, in pursuing relief for those constitutional violations under section 52.1, plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion."].) A case is not authority for propositions not considered and decided.[7] (*In re Chavez* (2003) 30 Cal.4th 643, 656.)

Nonetheless, *Shoyoye, supra,* 203 Cal.App.4th 947, is instructive. In that case, the plaintiff was lawfully arrested but was held more than two weeks after the order for his release; a county employee mistakenly attached information about another person to the defendant's paperwork. (*Id.* at pp. 951-953.) The plaintiff claimed interference with his constitutional right to be secure against unreasonable seizure. (*Id.* at p. 955.) Relying on a case which adopted the analysis in *Longval v. Commissioner of Correction* (1989) 535 N.E.2d 588 [404 Mass. 325] (*Longval*), the appellate court in *Shoyoye* held that where coercion is inherent in the constitutional violation alleged, as it is in an unreasonably prolonged detention, section 52.1 requires a showing of coercion independent from the

---

**7** For the same reason, *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033 (*Gillan*), a case plaintiffs cite, is not helpful. There is no discussion in *Gillan* about what constitutes "threats, intimidation, or coercion" under section 52.1. Plaintiffs cite *Quinn v. Fresno County Sheriff* (E.D.Cal., Dec. 14, 2012, No. 1:10-CV-01617 LJO BAM) 2012 WL 6561562 (*Quinn*) for the first time in their reply brief. Even if it were proper for us to consider *Quinn*, it is not persuasive because it failed to apply the reasoning in *Shoyoye, supra,* 203 Cal.App.4th 947, and relied instead on *Gillan*, a case which, as we have explained, did not analyze the "threats, intimidation, or coercion" element of section 52.1. (*Quinn, supra*, 2012 WL 6561562, at p. *5.)

coercion inherent in the wrongful detention.  (*Shoyoye, supra,* 203 Cal.App.4th at pp. 959-960 [citing *Gant v. County of Los Angeles* (C.D.Cal. 2011) 765 F.Supp.2d 1238].)[8]

The court in *Longval*, *supra*, 535 N.E.2d 588, construed the Massachusetts Civil Rights Act of 1979, upon which California modeled section 52.1.[9] *Longval* involved the transfer of the plaintiff to an administrative segregation unit in another prison allegedly without a required hearing and without required approvals.  (*Longval, supra,* 535 N.E.2d at p. 590.)  The Massachusetts Supreme Court ruled the use of force by prison officials in placing a prisoner in the segregated unit does not constitute coercion under the Massachusetts Civil Rights Act, even if it turned out the prison officials had no lawful right to take that action.  (*Id.* at pp. 590, 593.)  The Court in *Longval* said conduct that "take[s] someone's rights away directly," even if unlawful, does not satisfy the requirement of "threats, intimidation or coercion" under the Massachusetts Civil Rights Act.  (*Longval, supra,* 535 N.E.2d at p. 593; see also *Santiago v. Keyes* (D.Mass. 2012) 890 F.Supp.2d 149, 155-156 [the constitutional violation itself cannot also serve as the

---

[8]  The district court in *Gant* adopted the holding in *Longval*, stating that when use of force is intrinsic to the alleged constitutional violation, it cannot also satisfy the additional "coercion" element of section 52.1.  (*Gant, supra*, 765 F.Supp.2d at p. 1253.) The Ninth Circuit Court of Appeals recently reversed the district court's judgment in part because, as to one of the public entity defendants, the appellate court found a genuine issue of fact regarding whether police officers coerced the plaintiff to make an untrue statement.  (*Gant v. County of Los Angeles* (9th Cir. 2014) 772 F.3d 608, 623-624.)  The Ninth Circuit did not disagree with the district court's interpretation of section 52.1, and affirmed the district court's judgment as to the plaintiffs' other section 52.1 claims in a separately issued memorandum.  (*Id.* at p. 623, fn. 1; *Gant v. County of Los Angeles* (9th Cir. Nov. 24, 2014) 2014 U.S. App. Lexis 22192, at pp. *4, 9.)

[9]  Like California, Massachusetts authorizes a personal right of action "[w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth."  (Mass. Gen. Laws Ann. ch. 12, §§ 11H, 11I.)

prerequisite conduct under the Massachusetts Civil Rights Act; the statute requires threats, coercion or intimidation in addition to a constitutional violation, and the plaintiff cannot graft one act onto two distinct burdens].)

Similar to *Shoyoye*, this case involves an allegedly unlawful arrest but no alleged coercion beyond the coercion inherent in any arrest. (Cf. *Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 978 [although coercion is inherent in any arrest, where an arrest is unlawful *and* excessive force is applied, there is coercion independent of the wrongful detention].) Consistent with *Shoyoye*, we conclude a wrongful arrest or detention, without more, does not satisfy both elements of section 52.1. (*Shoyoye, supra,* 203 Cal.App.4th at p. 960.) The conclusory allegations of "forcible" and "coercive" interference with plaintiffs' constitutional rights are inadequate to state a cause of action for a violation of section 52.1. (*Aubry v. Tri-City Hospital Dist., supra,* 2 Cal.4th at pp. 966-967 [we do not assume the truth of conclusions of law]; *Maystruk v. Infinity Ins. Co.* (2009) 175 Cal.App.4th 881, 888 [conclusions without allegations of facts were fatal to the complaint].)

Plaintiffs cite *Cole v. Doe* (N.D.Cal. 2005) 387 F.Supp.2d 1084 (*Cole*), *Butler v. City of Sacramento* (E.D.Cal., Aug. 7, 2007, No. CIV. S-07-755 LKK/DAD) 2007 WL 2275218 (*Butler*), and *Ohlsen v. County of San Joaquin* (E.D.Cal., June 4, 2008, No. 2:06-CV-2361-GEB-GGH) 2008 WL 2331996 (*Ohlsen*). *Cole* predates *Shoyoye.* The district court in *Cole* held that the use of law enforcement authority to effectuate a stop, detention and search can constitute interference with the plaintiff's right to be free from an unreasonable search or seizure by threat, intimidation or coercion if the officer lacked probable cause to stop, detain and search the plaintiff. (*Cole, supra,* 387 F.Supp.2d at p. 1103.) *Butler* and *Ohlsen* rely on the holding in *Cole.* (*Butler, supra,* 2007 WL 2275218, at pp. *6-7; *Ohlsen, supra*, 2008 WL 2331996, at p. *4.) But none of the cases the district court in *Cole* relied upon -- *Venegas, supra*, 32 Cal.4th 820, *Jones v. Kmart Corp., supra*, 17 Cal.4th 329, or *Whitworth v. City of Sonoma* (September 22, 2004,

A103342) [nonpub. opn.] -- held that a wrongful arrest or detention, without more, constitutes threats, intimidation or coercion under section 52.1 where the arrest is itself the alleged constitutional violation.  (*Cole, supra,* 387 F.Supp.2d at p. 1103.)  Hence, *Cole* is not persuasive.  (*Shoyoye, supra*, 203 Cal.App.4th at p. 960 [also rejecting *Cole*].)

Plaintiffs also rely on *Moreno v. Town of Los Gatos* (9th Cir. 2008) 267 Fed.Appx. 665 (*Moreno*), another case which predates *Shoyoye*.  The court in *Moreno* said the plaintiffs stated a section 52.1 cause of action by alleging that police officers threatened to arrest some of the plaintiffs and actually arrested others.  (*Moreno, supra,* 267 Fed.Appx. at p. 666.)  But again, the holding in *Moreno* was based on *Venegas, supra*, 32 Cal.4th 820, *Jones v. Kmart Corp., supra*, 17 Cal.4th 329, and another case, *Stamps v. Superior Court* (2006) 136 Cal.App.4th 1441.  (*Moreno, supra,* 267 Fed.Appx. at p. 666.)  Because none of those cases addressed whether an arrest or threat of arrest constitutes threats, intimidation or coercion, *Moreno* is also not persuasive.

Plaintiffs further argue in their reply brief that even if they are required to allege facts showing threats, intimidation or coercion independent of the coercion inherent in a wrongful arrest or detention, they can do so because the enactment of the ordinance is the alleged constitutional violation, and the arrest of plaintiffs is an act of coercion independent of the enactment of the ordinance.  But plaintiffs raised this argument for the first time in their reply brief, they did not assert it in the trial court, and they do not cite legal authority supporting their theory.  "Obvious reasons of fairness militate against our considering this poorly developed and untimely argument."  (*Garcia v. McCutchen, supra*, 16 Cal.4th at p. 482, fn. 10.)

DISPOSITION

The judgment is reversed as to the first cause of action for declaratory judgment asserting an as-applied challenge based on equal protection.  The judgment is affirmed in all other respects.  The parties shall bear their own costs on appeal.


                                                 _____MAURO_____, J.


We concur:


_____RAYE_____, P. J.


_____HULL_____, J.