Filed 11/27/24  Su v. Capital Mailing Services CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| JULIE SU, as Labor Commissioner, etc., | C099724 |
| Plaintiff and Respondent, | (Super. Ct. No. CV20182437) |
| v. | |
| CAPITAL MAILING SERVICES, INC., et al., | |
| Defendants and Appellants. | |

Following the sudden closure of bulk mail company Capital Mailing Services, Inc. (CMS), and the discharge of its employees, Commissioner Julia Su, in her official capacity as the Labor Commissioner of the State of California (Labor Commissioner), brought suit against CMS and its owner (Perice Sibley) (collectively defendants), alleging various Labor Code violations, including a violation of the California Worker Adjustment

1

and Retraining Act (Cal/WARN Act or Act). (Lab. Code, § 1400 et seq.)[1] Of relevance here, the Cal/WARN Act requires an "employer" at a "covered establishment" to provide back pay and lost benefits to any affected employee who was not given 60 days' advance notice of a "mass layoff" or "termination." (§§ 1401, subd. (a), 1402, subd. (a).)[2] Defendants appeal from the judgment entered after the trial court granted summary judgment in favor of the Labor Commissioner. They claim reversal is required because the evidence before the trial court established one or more triable issues of material fact. Disagreeing, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Before we summarize the relevant facts and procedure, we first address the deficiencies of defendants' separate statement in opposition to the Labor Commissioner's motion for summary judgment.[3]

As our Supreme Court has explained, "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) "The requirement of a separate statement from the moving party and a responding statement from the party opposing summary judgment serves two functions: to give the parties notice of the material facts at issue in the motion and to permit the trial court to focus on whether those facts are truly undisputed." (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co*. (2005) 133 Cal.App.4th 1197, 1210.) " 'Separate statements

---

[1] Undesignated statutory references are to the Labor Code.

[2] The Cal/WARN Act authorizes the Labor Commissioner to enforce the notice requirements set forth in section 1401, subdivision (a). (§ 1406, subd. (b).)

[3] We recognize that the Labor Commissioner moved for summary judgment or, in the alternative, summary adjudication. For simplicity's sake, we refer to the Labor Commissioner's motion as a motion for summary judgment.

are required . . . to afford due process to opposing parties and to permit trial courts to expeditiously review complex motions for . . . summary judgment to determine quickly and efficiently whether material facts are in dispute.' " (*Ibid*.) That purpose is defeated when, as here, the parties opposing summary judgment fail to comply with the rules governing the format and content requirements of a separate statement in opposition to a motion for summary judgment. (See Code Civ. Proc., § 437c, subd. (b)(3) ["The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed. . . . Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion"]; Cal. Rules of Court, rule 3.1350(f)(2), (h) [setting forth the format and content requirements of a separate statement filed in opposition to a motion for summary judgment, including an unequivocal statement as to whether a fact is disputed or undisputed, and for each disputed fact, a statement identifying the nature of the dispute and a description of the evidence that supports the position that the fact is controverted].)

Here, at various points in their separate statement in opposition to the motion for summary judgment, defendants assert evidentiary objections without indicating whether the material fact claimed to be undisputed by the Labor Commissioner was in fact disputed or undisputed, and without providing a description of the evidence that demonstrated the fact was controverted. We construe defendants' deficient responding statement as admitting all of the facts in the Labor Commissioner's separate statement to which defendants purported to object but did not identify as disputed and did not cite evidence for the purpose of showing the fact was controverted. (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1186, fn. 4.)

3

*Factual Background*

We summarize the evidence in the light most favorable to the parties opposing summary judgment, in this case defendants, resolving any doubts concerning the evidence in their favor. (*Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1037.)

CMS was incorporated in 2008. It was a "privately held" bulk mail company,[4] with its principal place of business in West Sacramento. Sibley was a cofounder of CMS and the sole owner of the company since 2009.[5] At all relevant times, Sibley was CMS's chief executive officer, president, secretary, chief financial officer, and agent for service of process. During the 12-month period preceding its closure--February/March 2015 to February/March 2016--CMS employed at least 75 employees.

In April 2015, the Internal Revenue Service (IRS) filed a notice of federal tax lien with the California Secretary of State, indicating that CMS owed $566,738.02 in unpaid taxes. In June 2015, the IRS filed another tax lien notice with the California Secretary of State, indicating that CMS owed an additional $243,484,40 in unpaid taxes. In October 2015, the California Employment Development Department (EDD) "levied against" CMS's bank accounts in the amount of $63,243.84. In "late 2015," the IRS sought to collect a Trust Fund Recovery Penalty (TFRP) from Sibley related to CMS's federal tax liabilities.[6]

---

[4] CMS was in the business of providing full-service print, mail, and related marketing services.

[5] Since June 2012, Sibley has owned all stock in APC Holding & Management Inc., (APC) a California S corporation that has held all CMS stock since 2009. At all relevant times, Sibley was the only officer of APC.

[6] A TFRP is a fine charged when an employer willfully retains employee FICA (i.e., the payroll tax that funds Social Security and Medicare) and income taxes owed to the IRS. At some point in 2015, Sibley personally guaranteed payment of CMS's unpaid taxes to the IRS "in an amount not less than $500,000."

4

In November 2015, the United States Postal Service revoked CMS's bulk mail permit. During that same month, Sibley was informed that CMS was late in paying its rent.

In January 2016, the IRS levied CMS's bank accounts in the amount of $482,691.58.

In February 2016, CMS was served with a three-day notice to pay rent or quit.

One week later, on February 29, 2016, CMS sent all of its employees "home." Two days later, CMS notified its employees (via e-mail) that all of its operations were "temporarily suspended until further notice," and that all "future notice" from CMS would be sent to their address of record. Although CMS posted a sign on its door informing its employees that their final check would be mailed to them, CMS did not issue any paychecks to its employees for the final pay period of February 14 to March 4, 2016.

In connection with the summary judgment proceedings, it was not disputed that CMS permanently ceased operating during the week beginning February 29, 2016, and ending March 4, 2016, and that CMS's employees were sent a letter (dated March 3, 2016) advising them that all of CMS's "productions" were "terminated" and "wishing them luck in their future endeavors." In addition, it was not disputed that CMS failed to provide advance written notice of its closure to any employee or entity (e.g., EDD), that CMS did not seek an exemption from the Cal/WARN notice requirements, that CMS had employed 114 persons during the final pay period who had worked for CMS for at least six of the 12 preceding months,[7] and that, on February 29, 2016 (the same day CMS's

---

[7] Defendants did not dispute that 114 persons were employed by CMS during the final pay period or that CMS failed to give these employees 60 days' advance notice prior to their discharge. Instead, defendants claimed that a portion of the 114 employees were part-time or temporary employees, and therefore were not subject to the notice requirements of the Cal/WARN Act. Defendants also objected to the evidence the Labor

employees were sent home), Sibley withdrew more than $200,000 from CMS's bank accounts and used that money to purchase cashier's checks payable to cash, none of which was used to pay CMS's employees for their accrued wages.[8]  Finally, it was not disputed that CMS owed back pay and lost benefits to certain employees who were discharged in connection with CMS's closure.

> *Procedural Background*

>> *Complaint*

In December 2018, the Labor Commissioner filed suit against defendants, asserting three claims under the Labor Code:  (1) violation of the Cal/WARN Act (§ 1400 et seq.); (2) failure to pay minimum wages (§§ 558.1, 1193.6, 1194.2, 1197); and (3) waiting time penalties (§§ 201, 203, 558.1).  These claims were predicated on CMS's "mass layoff" or "termination" of more than 100 employees during the week of February 29, 2016, to March 4, 2016, without compliance with the notice requirements of the Cal/WARN Act (e.g., 60 days' advance notice to employees), and CMS's failure to pay its employees their final check (i.e., wages accrued for the time worked from February 14, 2016, to March 4, 2016) and any lost benefits.  The complaint alleged that, at all relevant times, Sibley was not only the chief executive officer, secretary, and chief financial officer of CMS, but also the sole owner and manager of the day-to-day operations of CMS.  The complaint further alleged that Sibley ordered the "mass layoff" or "termination" and did not pay CMS's employees their accrued wages upon discharge. As for relief, the complaint asserted that CMS and Sibley (individually) were liable for back pay ($814,507.84 or more), restitution of minimum wages ($128,000 or more),

---

Commissioner submitted to support these points.  As we note *post*, the trial court overruled defendants' objections.

[8]  According to Sibley, she withdrew the money from CMS's bank accounts on the advice of counsel to (among other things) pay creditors.

6

liquidated damages ($128,000 or more), and waiting time penalties ($407,253.92 or more).[9]

*Motion for Summary Judgment*

In April 2023, the Labor Commissioner moved for summary judgment against both defendants, asserting that there were no defenses or triable issue of material fact as to any of the claims alleged in the complaint.

In their written opposition, defendants made little effort to summarize the pertinent facts (one paragraph) and no effort to show that summary judgment was improper against CMS on the merits. Instead, defendants argued there were triable issues of material fact as to "Sibley's individual liability under each cause of action." Specifically, as for the alleged Cal/WARN Act violation, defendants asserted there was a triable issue of material fact as to whether Sibley "possessed and employed the requisite control" of CMS to qualify as an "employer" under the Act. In making this argument, defendants noted that there was no evidence Sibley was "personally responsible for paying the wages or salaries of CMS's employees." As for the other claims alleged in the complaint-- failure to pay minimum wages and waiting time penalties--defendants asserted there was a triable issue of material fact as to whether Sibley personally violated or caused to be violated any provision of the Labor Code, such that she could be held personally liable for these claims. Additionally, as to the Cal/WARN Act claim, defendants argued in a conclusory manner that summary judgment was improper because: (1) the Act only applies to full-time workers (as opposed to temporary workers) and the Labor Commissioner had not shown that the discharged employees worked full time; and

---

[9] In connection with the summary judgment proceedings, the Labor Commissioner noted that 79 of the 149 workers who were employed by CMS during the final pay period (February 14, 2016, to March 4, 2016) had obtained a judgment against CMS for unpaid wages. As such, the Labor Commissioner explained that "[t]o avoid a duplicative award," damages in an amount less than requested in the complaint was appropriate.

7

(2) the Labor Commissioner failed to prove that Sibley had "sufficient control of [CMS] in 2015 and 2016 to be held legally responsible and she denie[d] it." In making the latter argument, defendants claimed that it was "clear that other third parties caused CMS to fail, not . . . Sibley." Finally, defendants suggested (without further argument or explanation) that Sibley was not "liable" under the Cal/WARN Act because she was an "employer" who attempted to "save" CMS in good faith.

*Trial Court's Ruling*

In July 2023, the trial court issued a tentative ruling granting summary judgment in favor of the Labor Commissioner. In so ruling, the court found that the Labor Commissioner had proven each element of her claims, and that defendants had failed to set forth specific facts showing the existence of one or more triable issues of material fact. The court overruled all of defendants' evidentiary objections, declined to rule on the evidentiary objections lodged in defendants' separate statement in opposition to the motion for summary judgment, and sustained in part and overruled in part the Labor Commissioner's objections to Sibley's declaration. In sustaining objections to portions of two paragraphs of Sibley's declaration, the court explained that the objected-to evidence contradicted admissions made during the discovery process and Sibley's prior sworn statements.

In August 2023, after the tentative ruling became the final order of the court, judgment was entered in favor of the Labor Commissioner and against defendants in the aggregate amount of $1,063,169.99, plus attorney fees.

*Appeal*

Defendants timely appealed.

8

# DISCUSSION

## I

### *Standard of Review*

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); see also *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

A plaintiff moving for summary judgment or summary adjudication has the burden of showing there is no defense to a cause of action. (Code Civ. Proc., § 437c, subd. (a).) That burden can be met if the plaintiff has proved each element of a cause of action entitling the party to judgment on that cause of action. (Code Civ. Proc., § 437c, subd. (p)(1).) This means that a plaintiff who bears the burden of proof at trial by a preponderance of evidence must produce evidence that would require a reasonable trier of fact to find any underlying material fact more likely than not. (*Aguilar*, *supra*, 25 Cal.4th at p. 851.)

If a plaintiff successfully meets their burden, the burden shifts to the defendant to set forth specific facts showing the existence of one or more triable issues of material fact as to the cause of action or a defense thereto. (Code Civ. Proc., § 437c, subd. (p)(1); see also *S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.* (2010) 186 Cal.App.4th 383, 388.) A triable issue of material fact exists if the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing summary judgment in accordance with the applicable standard of proof. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) "An issue of fact can only be created by a conflict of evidence. It is not created by 'speculation, conjecture, imagination or guess work.' [Citation.] Further, an issue of fact is not raised by 'cryptic, broadly phrased, and conclusory assertions' [citation], or mere possibilities." (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196-197.)

We independently review an order granting a motion for summary judgment. (*Yanowitz v. L'Oreal USA, Inc.*, *supra*, 36 Cal.4th at p. 1037.)  In doing so, we apply the traditional three-step analysis used by the trial court, that is, we (1) identify the issues framed by the pleadings, (2) determine if the moving party has met their initial burden, and if and only if so, (3) determine if the opposing party has raised a triable issue of material fact.  (See *Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175; *Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630; *Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1602.)  "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale."  (*Oakland Raiders*, at p. 630.)

Our review is governed by a fundamental principle of appellate procedure; namely, that " '[a] judgment or order of the lower court is *presumed correct*,' " and thus, " 'error must be affirmatively shown.' "  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see also *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)  Under this principle, the appellant bears the burden of establishing error on appeal, even though the respondent had the burden of proving its right to summary judgment before the trial court.  (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 372; *Frank & Freedus v. Allstate Ins. Co.* (1996) 45 Cal.App.4th 461, 474.)  For this reason, our review is limited to contentions adequately raised and supported in the appellant's brief.  (*Nealy*, at p. 372; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126.)  "It is the responsibility of the appellant . . . to support claims of error with meaningful argument and citation to authority.  [Citations.]  When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration.  [Citations.]  In addition, citing cases without any discussion of their application to the present case results in forfeiture.  [Citations.]  We are not required to examine undeveloped claims or to supply arguments for the litigants."  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*).)

## II

### *Motion for Summary Judgment*

At the outset, we note that defendants' appeal is limited in nature. In their opening brief,[10] defendants do not argue that summary judgment was improperly granted against CMS on the merits. As for Sibley, defendants offer various and largely undeveloped arguments as to why summary judgment was improperly granted, including the existence of one or more triable issues of material fact as to "Sibley's individual liability under each cause of action." Defendants add that "given the way the [Labor Commissioner] chose to frame and notice [the summary judgment] motion"--specifically, not requesting summary judgment or adjudication as to each defendant "separately and individually"--summary judgment was improperly granted against CMS. As we next explain, we see no basis for reversal.

### A. *Cal/WARN Act*

The Cal/WARN Act prohibits an "employer" from ordering a "mass layoff" or "termination" at a "covered establishment" unless, 60 days before the order takes effect, the employer gives written notice of the order to the employees of the covered establishment affected by the order and the statutorily specified government officials and entities (e.g., EDD). (§ 1401, subd. (a).) Here, the evidence showed that CMS, which suddenly closed and ceased operating in late February 2016 or early March 2016, was a "covered establishment" because it employed 75 or more people within the preceding 12 months, thereby making it an "employer" subject to the requirements of the Cal/WARN Act.[11] (§ 1400.5, subd. (a) [defining "covered establishment" to mean "any industrial or

---

[10] Defendants did not file a reply brief.

[11] In the trial court, there was no dispute that CMS was a "covered establishment" under the Cal/WARN Act. However, on appeal, defendants suggest that reversal is required because Sibley "personally was never a 'covered establishment.'" This undeveloped suggestion of error has no merit whatsoever, as the Cal/WARN Act contains no such

commercial facility or part thereof that employs, or has employed within the preceding 12 months, 75 or more persons"]; § 1400.5, subd. (b) [defining "employer" to mean "any person, as defined by Section 18, who directly or indirectly owns and operates a covered establishment"]; § 18 [defining "person" to include a corporation].) Sibley also qualified as an "employer" under the Act because the evidence showed that she was the "person" who owned and operated CMS during the relevant time period. (See § 1400.5, subd. (b); § 18.) And the discharge of CMS's employees (over 100 people) in connection with the closure of CMS was both a "termination"--because CMS stopped commercial operations at a covered establishment (§ 1400.5, subd. (f))--and a "mass layoff"--because 50 or more employees (i.e., persons employed at least six months of the 12 months preceding the date on which notice was required (§ 1400.5, subd. (h)) were discharged within a 30-day period (§ 1400.5, subd. (d)). Finally, it was not disputed that neither CMS nor Sibley gave 60 days' advance written notice of the mass layoff or termination to any affected employee or any other person or entity specified in the Act (e.g., EDD). (§ 1401, subd. (a).)

On this record, the trial court properly granted summary judgment in favor of the Labor Commissioner on the Cal/WARN Act claim. The evidence submitted by the Labor Commissioner showed there was no defense to the claim (i.e., the evidence proved each element of the claim), and defendants failed to meet their burden to set forth specific facts establishing the existence of one or more triable issues of material fact as to the claim or a defense thereto.

---

requirement. As discussed, the Act prohibits an "*employer*" from ordering "a mass layoff . . . or termination *at a covered establishment* unless, 60 days before the order takes effect, the employer gives written notice of the order" to (among others) "[t]he employees of the covered establishment affected by the order." (§ 1401, subd. (a), italics added.) The Act defines a "covered establishment" to mean "*any industrial or commercial facility or part thereof that employs, or has employed within the preceding 12 months, 75 or more persons*. (§ 1400.5, subd. (a), italics added.)

In urging a contrary result, defendants primarily argue that Sibley's declaration (executed in June 2023) established one or more triable issues of material fact. Specifically, defendants claim the declaration created a triable issue of fact as to whether Sibley was an "employer" within the meaning of the Cal/WARN Act. In support of their position, defendants initially assert that the trial court erred in relying on (among other cases) *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, to *disregard* Sibley's declaration.[12] However, the record reflects that the trial court excluded only two portions of Sibley's declaration.[13] And, in any event, we need not decide whether there was evidentiary error because, even considering the excluded evidence, we fail to see how Sibley's declaration was sufficient to defeat summary judgment.

---

[12] The party opposing summary judgment may be bound by admissions made in deposition testimony or responses to interrogatories or requests for admissions: "[W]hen discovery has produced an admission or concession on the part of the party opposing summary judgment which demonstrates that there is no factual issue to be tried," controverting affidavits submitted by that party may be disregarded. (*D'Amico v. Board of Medical Examiners*, *supra*, 11 Cal.3d at pp. 20-22.) This rule is often referred to as the *D'Amico* rule. "Properly applied, [the rule] is limited to instances where 'credible [discovery] admissions . . . [are] contradicted *only* by self-serving declarations of a party.' [Citations.] In a nutshell, the rule bars a party opposing summary judgment from filing a declaration that purports to impeach his or her own prior sworn testimony." (*Scalf v. D.B. Log Homes, Inc*. (2005) 128 Cal.App.4th 1510, 1521-1522.)

[13] The two excluded portions of Sibley's declaration stated as follows: (1) "CMS continued to pay its employees into February 2016. I did not know in November or December of 2015, or even in January of 2016, that CMS' employees were in danger of losing their jobs, or the business would in fact fail"; and (2) "CMS did not necessarily pay its employees every two weeks or bi-monthly." Prior to the execution of this declaration, Sibley responded to discovery requests (requests for admission) propounded by the Labor Commissioner. Among other things, Sibley admitted that, as of November 2015, she was aware that the IRS had threatened to "shut down" CMS due to its failure to "keep current on its taxes," which would result in 160 people losing their jobs. Sibley also admitted that it was CMS's official practice to pay its employees bi-monthly, on approximately the first and 16th of each month.

13

Although not entirely clear, defendants suggest that summary judgment was improperly granted on the Cal/WARN Act claim as to Sibley because, "irrespective of [Sibley's] ownership of CMS," there was "a triable issue . . . as to whether she possessed and employed the requisite control" over CMS to be considered an "employer" under the Cal/WARN Act. In other words, defendants argue there was a triable issue of material fact as to whether Sibley directly or indirectly operated CMS. (See § 1400.5, subd. (b) [defining "employer" for purposes of the Cal/WARN Act to include any person who directly or indirectly *owns and operates* a covered establishment].) According to defendants, Sibley's declaration "demonstrated the inference" that she had "effectually lost control of CMS's operations when the requisite notices required by the Act should have hypothetically been provided." However, a review of Sibley's declaration reveals that the person she accused of controlling CMS and improperly representing himself as the president and/or chief executive officer of the company in her absence (Andy Cody) was terminated in 2015, long before CMS's employees were sent home on February 29, 2016.[14] Moreover, there was other evidence in the record--a declaration executed by Sibley in *November 2015* in connection with a related federal action--demonstrating that, after Cody was terminated, Sibley took over management of CMS in May 2015. Further, it was undisputed that, at all relevant times, Sibley was the chief executive officer, president, chief financial officer, and secretary of CMS. Defendants cite no authority supporting the proposition that, under the circumstances presented, there was a triable issue of material fact as to whether Sibley was an "employer" within the meaning of the Cal/WARN Act. Nor have defendants shown, by citation to pertinent authority and reasoned legal analysis, that Sibley was not an "employer" under the Cal/WARN Act as a matter of law. In short, given the record and defendants' inadequate appellate briefing,

---

[14] The evidence submitted in support of the Labor Commissioner's motion for summary judgment showed that Sibley terminated Cody on September 8, 2015.

14

no further discussion of this issue is required. (See *Allen*, *supra*, 234 Cal.App.4th at p. 52 [when legal argument with citation to authority is not furnished on a particular point, the point may be deemed forfeited].)

B. *Failure to Pay Wages and Waiting Time Penalties*

We find no merit in defendants' contention that reversal is required because Sibley's declaration created a triable issue of material fact as to "whether she could be held legally liable" for the wage and hour claims alleged by the Labor Commissioner (i.e., failure to pay wages and waiting time penalties). According to defendants, "[t]he Labor Code does not appear to provide for the remedy sought by the [Labor Commissioner] from corporate agents acting within the course and scope of their agency for the corporate employer's failure to pay its employees' wages."

As correctly pointed out by the Labor Commissioner, section 558.1 expressly authorizes the Labor Commissioner to hold certain individuals liable for wage and hour violations. That provision states: "Any employer *or other person acting on behalf of an employer*, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation." (§ 558.1, subd. (a).)[15] "For purposes of this section, the term 'other person acting on behalf of an employer' is limited to a natural person who is an owner, director, officer, or managing agent of the employer . . . ." (§ 588.1, subd. (b).) Thus, contrary to defendants' contention, the Labor Code authorized the "remedy" sought by the Labor Commissioner. (See *Seviour-Iloff v. LaPaille* (2022) 80 Cal.App.5th 427, 442 [explaining that the legislative history of

---

[15] The Division of Labor Standards Enforcement, headed by the Labor Commissioner, is the state agency empowered to enforce California's labor laws. (§ 61; *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561-562; *California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 18.)

15

section 588.1 demonstrates that the Legislature, in enacting the provision, gave the Labor Commissioner the authority to hold individual business owners accountable for their debts to workers to " ' "discourage business owners from rolling up their operations and walking away from their debts to workers and starting a new company" ' "], review granted Oct. 26, 2022, S275848.)[16]

And nothing in the record establishes a triable issue of material fact as to whether Sibley was subject to individual liability for violating, or causing to be violated, the provisions of the Labor Code underlying the Labor Commissioner's claims for failure to pay minimum wages (§ 1193.6, 1194.2, 1197) and waiting time penalties (§ 203).  To be held liable under section 558.1, an "owner" such as Sibley "must either have been personally involved in the purported violation of one or more of the enumerated provisions; or, absent such personal involvement, had sufficient participation in the activities of the employer, including, for example, over those responsible for the alleged wage and hour violations, such that the 'owner' may be deemed to have contributed to, and thus for purposes of this statute, 'cause[d]' a violation."  (*Usher v. White* (2021) 64 Cal.App.5th 883, 896-897; see *Espinoza v. Hepta Run, Inc*. (2022) 74 Cal.App.5th 44, 59 [determining that "in order to 'cause' a violation of the Labor Code, an individual must have engaged in some affirmative action beyond his or her status as an owner, officer or director of the corporation"; to be held personally liable, the individual "must have had some oversight of the company's operations or some influence on corporate policy that resulted in the Labor Code violations"].)  Here, as discussed, at all relevant times, Sibley was the sole owner, chief executive officer, president, chief financial officer, and

[16]  In its order granting review, the California Supreme Court specified the issues to be briefed and argued.  The specified issues do not include whether section 588.1 authorizes the Labor Commissioner to hold individual business owners accountable for the wage and hour violations identified therein.  The Supreme Court held that, "Pending review, the opinion of the Court of Appeal . . . may be cited . . . for its persuasive value . . . ." (*Seviour-Iloff v. LaPaille* (Oct. 26, 2022, S275848) 2022 Cal. Lexis 6590.)

secretary of CMS. In May 2015, she took over management of CMS. In late February 2016, all of the employees working at CMS's facility in West Sacramento were sent home and CMS permanently closed shortly thereafter. On the same date that CMS's employees were sent home, Sibley withdrew over $200,000 from CMS's bank accounts, none of which was used to pay the wages accrued by employees during the final pay period of February 14 to March 4, 2016. On this record, we discern no error in the trial court's determination that summary judgment was warranted in favor of the Labor Commissioner on the wage and hour claims.

### III

*Remaining Issues*

In their opening brief, defendants present several undeveloped arguments that we reject. As they did in the trial court, defendants contend (without further elaboration or explanation) that: (1) the Cal/WARN Act applies only to full-time workers (as opposed to temporary workers) and the Labor Commissioner failed to establish (as a matter of law) that the CMS employees discharged in late February or early March 2016 were full-time workers; and (2) an employer attempting to save a business in good faith, such as Sibley, is not liable under the Cal/WARN Act. Because these arguments were not properly raised in the trial court or on appeal, we deem them forfeited. (See *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 770 [undeveloped point raised for the first time in reply papers before the trial court deemed forfeited]; *Allen*, *supra*, 234 Cal.App.4th at p. 52 [argument forfeited for failing to adequately raise on appeal].)[17] Moreover, the former argument lacks merit, as there is no evidence in the record

---

[17] To the extent defendants' opening brief raises other undeveloped contentions suggesting reversal is required (e.g., the declaration filed by the Labor Commissioner in support of the motion for summary judgment was not admissible), we deem those claims forfeited. (*Allen*, *supra*, 234 Cal.App.4th at p. 52 [argument forfeited for failing to adequately raise on appeal].)

17

(including Sibley's declaration) suggesting that any CMS employee was "hired with the understanding that their employment was seasonal and temporary." (See § 1400.5, subd. (g)(2) [Cal/WARN Act does not apply to employees who are employed in *seasonal employment*].)

Finally, we find no merit in defendant's contention that summary judgment was improperly granted against CMS because the Labor Commissioner did not seek summary adjudication as to CMS "separately on the second and third causes of action" (i.e., the wage and hour claims). This argument is belied by the record. Both the notice of motion and the motion papers filed in connection therewith make clear that the Labor Commissioner moved for summary judgment or, in the alternative, summary adjudication against CMS on all three claims alleged in the complaint.

## DISPOSITION

The judgment is affirmed. The Labor Commissioner shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/s/
Duarte, Acting P. J.

We concur:

/s/
Renner, J.

/s/
Mesiwala, J.