Filed 1/9/26  J.P. v. Sutter Bay Hospitals CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| J.P., a Minor, etc., et al., <br><br> Plaintiffs and Appellants, <br> v. <br> SUTTER BAY HOSPITALS, <br><br> Defendant and Respondent. | A171454 <br><br> (Alameda County Super. Ct. No. RG19046060) |

Laura R. Holloway, a 37-year-old mother of two, died at Alta Bates Summit Medical Center (Alta Bates) in 2018.  Medical records indicate that Holloway was found seizing on the floor of her hospital room on September 6; she did not regain consciousness and was pronounced dead on September 8.  However, Holloway's children claim that she died from respiratory failure on September 4—two days prior to the represented seizures—after being "accidentally over medicated" with double her prescribed dose of hydromorphone, "a powerful, injectable, synthetic opiate pain medication known as Dilaudid"; then hospital staff tried to cover up Holloway's resulting death by falsifying her medical records.

Holloway's children sued Alta Bates (formally Sutter Bay Hospitals) and appeal from the entry of summary judgment against them.  In their briefing to us, plaintiffs argue the trial court improperly relied on Alta Bates's expert declarations in granting the motion for summary judgment

1

because (1) plaintiffs submitted "substantial evidence" that the underlying medical records were "inaccurate, false or fraudulent," thus Alta Bates could not carry its moving burden, and (2) even if the moving burden was satisfied, plaintiffs' evidence demonstrated a triable issue of fact as to the cause of Holloway's death. We are not persuaded. Based on our independent review of the evidence, we agree with the trial court's burden shifting and determination that plaintiffs failed to raise a triable issue of fact regarding causation. Therefore, we affirm summary judgment in favor of Alta Bates.

## BACKGROUND

### I. Factual Background

On August 30, 2018, Laura Holloway presented to the emergency department at Sutter Solano Medical Center with complaints of "fever and generalized body aches." Holloway had been experiencing "dental problems" for "several months . . . but ha[d] not been able to see a dentist" and was diagnosed with a "Dental infection/Tooth abscess" and "Severe sepsis secondary to dental abscess." Holloway was admitted and given injectable hydromorphone (Dilaudid) to manage her pain. "Despite [receiving] broad spectrum antibiotics" to address the sepsis, Holloway "continued to have fevers and facial swelling." Thus, the attending physician "asked for an oral surgery evaluation."

On September 2, 2018, Holloway was transferred to Alta Bates for evaluation and treatment by Daniel Nam, D.D.S., an oral maxillofacial surgery specialist, because there was no dentist available at Sutter Solano.

On September 3, Jenna Dean, M.D., assumed care of Holloway at Alta Bates. In her progress notes, Dr. Dean indicated "dentistry to see [Holloway] today" and ordered a "panoramic jaw" X-ray. Around 11:45 a.m., Dr. Nam evaluated Holloway, who reported pain in her "upper right jaw and face."

2

Dr. Nam observed "[m]any teeth in general [were] fractured and carious" and scheduled an appointment at his dental office "tomorrow morning for assessment and extractions." Holloway's cell phone records indicate that she made 10 telephone calls on September 3.

Records detailing "Medications and Administration" (MAR) reflect that at 1:00 a.m. on September 4, 2018, Eileen Zheng, a registered nurse, gave Holloway a "1 mg" injection of hydromorphone (Dilaudid). These records further detail that at 1:11 a.m. on the same date, Eric Koch, a registered nurse, also gave Holloway a "1 mg" injection of hydromorphone.[1]

Later that morning (September 4), around 8:30 a.m., Holloway was transported by ambulance to Dr. Nam's dental clinic where she was evaluated by Amy Blake, D.D.S. Dr. Blake conducted a visual examination and took another panoramic jaw X-ray.[2] Her "procedure notes" represent that "[n]early all" of Holloway's "teeth [were] affected to varying degrees with caries" and "multiple teeth [were] fractured with deep caries." Dr. Blake discussed with Holloway the plan "to have three teeth extracted" (tooth Nos. 2, 4 & 6) and subsequently noted: "Teeth extracted with elevation and forceps" without complications.

At 12:45 p.m., still on September 4, Holloway "returned [to Alta Bates] from oral surgeon" and "request[ed] pain medication." Cell phone records reflect Holloway made a two-minute call at 12:51 p.m. Dr. Dean saw

---

[1] Zheng subsequently testified at deposition that the 1:00 a.m. entry was "an error" because she was "not in the hospital at 1:00 a.m."; she had administered the Dilaudid at 5:13 p.m. on September 4, as is later reflected in the MAR.

[2] The time "18:38 PM" is stamped on the X-ray. At deposition, Dr. Nam was unable to explain the source of the time stamp.

3

Holloway again shortly after 1:00 p.m., and Holloway had a visit from the hospital pastor around 2:30 p.m.

The next day, September 5, at approximately 7:00 a.m., an Alta Bates nurse assessed Halloway while she was awaiting transfer back to Sutter Solano. The nurse noted that Holloway was alert and oriented and gave her "pain meds."

Michael Huynh, M.D., evaluated Holloway before noon the same day. Dr. Huynh reported that Holloway complained of "pain in [her] mouth where recent extraction took place" but was otherwise "stable and was planned to discharge back to [Sutter] Solano for continued care with IV antibiotics."

At approximately 2:40 p.m. on September 5, Holloway was seen by another nurse, who reported that Holloway was "alert" and "awake" but had "flat affect" and "slow soft speech." Holloway was given Dilaudid "for generalized pain, mostly in face and abdomen," and "kept safe and comfortable" while "waiting [for] transfer back to Sutter Solano."

In the early morning hours of September 6, shortly before 12:30 a.m., Susana Bell, C.N.A., found Holloway on the floor of her room and reportedly "witnessed [a] 3 minute seizure." "It was not clear how long she had been down." Bell alerted a nearby nurse, who called the rapid response team.

Clara Breen, a registered nurse and part of the rapid response team, arrived as Holloway was "being lifted back to [bed]." Holloway was "staring off, possibly still having partial seizures" and was given medication to break the seizure, after which Holloway was "no longer with any jerking movements, but continue[d] to stare off and [was] nonverbal."

At 12:56 a.m., Tamika Bailey, M.D., examined Holloway "in person" and noted "possible partial seizures" and "intermittent jerking of her arms and legs" at the time of the exam. Dr. Bailey ordered a CT scan of Holloway's

4

head, and the nurses notified Holloway's mother, who was "out of town but answered the call." The CT scan showed "cerebral edema consistent with anoxic brain injury and herniation"; that is, "severe and irreversible brain damage." Holloway was moved to intensive care for further evaluation and intubated for airway protection.

The evening of September 6, 2018, Holloway was "examined in detail multiple times" by different doctors. After conducting a neurology examination, Matthew Arnold, M.D., suspected that Holloway "had some arrhythmia or other event on [the] floor leading to anoxic injury, causing secondary seizures (though . . . [the] seizures could have caused anoxia as well)."

At 2:05 a.m. on September 7, a urine sample was collected from Holloway and tested for opiates; the results came back negative.

Holloway progressed to "clinical brain death" due to "Anoxic Respiratory Failure" and was declared dead on September 8, 2018. A subsequent autopsy reported: "The etiology of the seizure is not determined by the autopsy findings in this case. This patient may have been at increased risk of seizure given the presence of sepsis."

## II. Procedural History

In December 2019, Holloway's minor children, by and through their guardian ad litem, filed a civil suit against Alta Bates and several other doctors and entities. The complaint was amended multiple times, resulting in a sixth amended complaint filed in December 2022 that asserted two causes of action for medical negligence and battery. Plaintiffs alleged that Holloway's death was not caused by anoxic respiratory failure on September 6, as reflected in her medical records, rather she died from being

"accidentally over medicated with Dilaudid" on September 4, and defendants purportedly tried to conceal her death by "falsif[ying]" her medical records.[3]

On February 15, 2024, Alta Bates moved for summary judgment or in the alternative summary adjudication pursuant to Code of Civil Procedure section 437c.[4]  It argued summary judgment was proper because the "undisputed evidence confirms that Alta Bates met the standard of care at all applicable times" and did not otherwise cause Holloway's death.[5]

In support of its motion, Alta Bates submitted Holloway's medical records and the declarations of retained experts regarding the applicable standard of care for doctors and nurses.  Christine Tarver, D.N.P., Alta Bates's nursing expert, opined that the nurses rendered reasonable care and "that no alleged act or omission of any of the nurses or certified nursing assistance at [Alta Bates] was a substantial factor in causing [Holloway's] alleged harm."  Tarver specifically noted the "discrepancy" suggesting that Dilaudid was administered to Holloway on September 4 at both 1:00 a.m. and again at 1:11 a.m. and explained that the 1:00 a.m. time entry was accidental and "incorrect" because the nurse was "not even at work" at that time.  Further, records "that document the time and amount of each dose of narcotic, opioid or other types of pain medication were dispensed" reflected

---

[3] Plaintiffs alleged that Holloway suffered respiratory failure on September 4 "in one of several possible ways" and subsequently "whittled" the possible causes "down to one, namely that she died from an overdose of opiate medication on the morning of September the 4th, 2018."

[4] Further undesignated statutory references are to the Code of Civil Procedure.

[5] Alta Bates also sought summary adjudication of several issues, including lack of vicarious liability for the conduct of the physicians, Holloway's consent to treatment, and lack of evidence of a conspiracy.

that the hydromorphone was disbursed around 5:09 p.m. on September 4, when the nurse was working.

Payam Nahid, M.D., Alta Bates's expert regarding "intensivists," opined that there was "no evidence of an overdose." Dr. Nahid noted the toxicology screen taken at 2:05 a.m. on September 7, 2018, "was negative for opiates" and "would have shown evidence of an opiate overdose for up to a 72 hour period"; it therefore "demonstrate[d] [Holloway] did not suffer an opioid overdose on September 6, 2018." Additionally, Dr. Nahid opined that Holloway "did not suffer any sort of brain injury or other event on September 4, 2018[, or] September 5, 2018," because "medical records demonstrate [Holloway] was alert, responsive and oriented" and "interacting with care providers" on those dates. Benny Gavi, M.D., Alta Bates's expert regarding care rendered by its "hospitalists," similarly "saw no evidence that proves, more likely than not, that [Holloway] died from an opioid overdose. The urine toxicology screen [conducted] on September 7, 2020, was negative for opioids."

Plaintiffs served two separate ex parte applications—on February 29 and April 5, 2024—"to continue the hearing date on all [pending] motions for summary judgment." The court denied the first application but issued a scheduling order on April 18, setting Alta Bates's motion for summary judgment for hearing on May 9, 2024, with plaintiffs' opposition due April 25 and Alta Bates's reply brief due May 3.

Between May 1 and 2, 2024, plaintiffs served an "untimely" opposition to Alta Bates's summary judgment motion that did not include any objections to the evidence submitted by Alta Bates in support of its motion. The opposition included as exhibits Holloway's cell phone records, which reflect Holloway's last outgoing call was September 4, 2018, at 12:51 p.m., and

7

supplemental medical records from 2017 that noted Holloway exhibited "drug seeking behavior," with respect to pain medication.

Plaintiffs also offered the declarations of John Pappas, M.D., D.D.S., a dentist and oral surgeon, and Jason Somerby, a registered nurse. In his declaration, Dr. Pappas focused on several "discrepancies" in Holloway's dental records. "Presum[ing] that time is correct" as stamped on the second panoramic X-ray represented to have been taken at Dr. Nam's office on September 4, Dr. Pappas concluded "that the dental work reported in the Nam dental records is unlikely to have been done" because the X-ray showed "[no] change in the structure of the teeth" from the earlier X-ray taken at Alta Bates. Dr. Pappas opined that Holloway's dental care fell below the appropriate standard of care but did not state that any act or omission on the part of Alta Bates caused Holloway's death.

In his declaration submitted in opposition, Somerby opined that the treating nurses did not meet their standard of care, stating that the Alta Bates nurses failed "to discover that Ms. Holloway was an opiate addict and to take the steps required by the standard of care to protect her." Somerby also opined that Holloway's medical records reflected an "eleven-minute interval between doses of [Dilaudid]" on September 4, which "constituted a material overdose of the medication." He rejected as "patently false" Alta Bates's explanation that the 1:00 a.m. time entry was "incorrect," because if the nurse had "inadvertently put 1:00AM instead of 5:17PM on 9/4/18 for an administration by injection of 1 mg of Dilaudid, EPIC [the electronic medical records computer system] would have alerted her that she was violating the prescription parameter." As to the cause of death, Somerby "reasonably infer[red] that Ms. Holloway, within medical probability, suffered an adverse outcome as a result of being overdosed with Dilaudid medication."

8

On May 3, Alta Bates timely filed a reply brief, objecting to plaintiffs' declarations—including a specific objection to Somerby's opinion on causation—and argued that plaintiffs failed to offer any admissible evidence of the cause of Holloway's death.

On its own motion, the court twice continued the scheduled May 6 hearing on Alta Bates's motion for summary judgment. As part of the second continuance order, the court noted that plaintiffs failed to "adequately authenticate[ ]" certain records and that plaintiffs' experts failed to identify the deposition testimony they relied upon in coming to their conclusions. The court granted leave for plaintiffs to file supplemental declarations and granted Alta Bates leave to file any objections thereto.

On July 8, 2024, plaintiffs served a supplemental declaration of counsel, which the court considered "even though it was late and it is unclear whether it was properly filed." Although Dr. Pappas and Somerby did not file supplemental declarations, counsel's declaration "summarize[d]" Zheng's deposition testimony concerning the incorrect 1:00 a.m. time entry for the injection of Dilaudid. On July 11, Alta Bates filed a supplemental brief and objections to plaintiffs' counsel's supplemental declaration.

"Two days before the hearing" on Alta Bates's motion for summary judgment,[6] plaintiffs filed their third ex parte application for a continuance. Plaintiffs sought leave to submit new evidence in support of their opposition, namely, a declaration of Louis Caplan, M.D., who plaintiffs represented was "traveling out-of-state, spending time with his many children and grandchildren after his retirement a few months ago." The court denied the

_____

[6] By this time, the court had again continued the hearing on Alta Bates's motion for summary judgment, which was now set for September 26, 2024.

9

motion, finding plaintiffs' reason for delay in obtaining Dr. Caplan's declaration "not credible."

After hearing argument on the motion and taking the matter under submission, the court granted summary judgment in favor of Alta Bates on September 30, 2024. The court found plaintiffs failed to offer admissible evidence of the cause of Holloway's death and therefore did not raise a triable issue of fact as to causation. In doing so, the court sustained certain objections to Somerby's declaration, finding Somerby's opinion that Holloway "suffered an adverse outcome as a result of being overdosed with Dilaudid medication" lacked foundation and was "an improper purported expert opinion." The court entered judgment in favor of Alta Bates on October 11, 2024.

On September 9, 2024, plaintiffs filed a notice of appeal from summary judgment in favor of defendants Dr. Nam and Dr. Blake. On October 28, 2024, plaintiffs filed an amended notice of appeal that included the judgment in favor of Alta Bates and dismissal of several other defendants. Currently, "Plaintiffs appeal from the grant of summary judgment to [Alta Bates] only," and all parties except for Alta Bates have since been dismissed.

## DISCUSSION

The purpose of summary judgment is to allow courts to "cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) To prevail on a summary judgment motion, the defendant must show that one or more of the elements of each cause of action cannot be established or that there is a complete defense to the claims. (§ 437c, subd. (p)(2).) If the defendant makes such a

10

showing, then the burden shifts to the plaintiff to raise a triable issue of material fact. (*Ibid.*)

We review orders granting summary judgment de novo. (*Applegate v. Carrington Foreclosure Services, LLC* (2025) 112 Cal.App.5th 356, 364.) We consider both parties' evidence, except that to which an objection has been sustained, viewing it "in the light most favorable to plaintiffs as the losing parties, liberally construing their evidentiary submission while strictly scrutinizing [the defendant's] showing." (*McCurry v. Singh* (2024) 104 Cal.App.5th 1170, 1175.)

On appeal, we " 'apply the same three-step analysis as the trial court.' " (*Zaragoza v. Adam* (2025) 109 Cal.App.5th 113, 118 (*Zaragoza*).) " ' "First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue." ' " (*Id.* at p. 118.)

First, defining the issues based on the pleadings, the operative sixth amended complaint asserted a claim for medical negligence.[7] Plaintiffs alleged that Holloway's "respiratory failure occurred not on 9/6 as stated in [Holloway's] medical records, but on 9/4/18" due to "one of several possible"

---

[7] Before the hearing on Alta Bates's motion for summary judgment, the trial court issued a tentative ruling noting that plaintiffs "fail[ed] to address" their second cause of action for battery, which the court "construed . . . as conceding Alta Bates' position. Plaintiffs did not contest that aspect of the tentative ruling at the hearing." In this appeal, plaintiffs do not present any argument regarding their battery claim and therefore forfeit any related challenge to the court's ruling. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration"].)

causes, namely, being "accidentally over medicated with Dilaudid and suffer[ing] respiratory depression . . . which led to respiratory failure and ensuing brain injury." The elements of a claim for medical negligence are a duty of care, a breach of that duty, a causal connection between the breach and resulting harm, and damages. (*Simmons v. W. Covina Medical Clinic* (1989) 212 Cal.App.3d 696, 701–702.)

Under the second step, we consider whether Alta Bates met its moving burden of showing "that one or more elements of the cause of action . . . cannot be established." (*Zaragoza, supra*, 109 Cal.App.5th at p. 118; § 437c, subd. (p)(2).) Where plaintiffs allege medical malpractice based on professional negligence, "expert testimony is required to establish . . . whether the defendant's conduct proximately caused the plaintiff's injuries within a reasonable medical probability." (*Zaragoza*, at pp. 118–119.)

Based on our independent review of the evidence, we conclude the Alta Bates's expert declarations satisfied its moving burden of showing that Alta Bates did not cause Holloway's injuries. Both experts, Dr. Gavi and Dr. Nahid, opined that Alta Bates did not cause Holloway's death, specifically concluding that Holloway's demise was not caused by an opiate overdose. Dr. Nahid expressly declared that Holloway did not die on September 4, as plaintiffs alleged, or anytime "[p]rior to September 6, 2018." Alta Bates's expert declarations set forth the materials each expert reviewed, including Holloway's relevant medical background, and supported their conclusions with reference to applicable test results and medical records. Recognizing " '[t]he opinion of any expert "is only as good as the facts and reasons on which it is based," ' " here, Alta Bates's experts provided sufficient factual detail and reasoned explanation for their opinions to shift the burden to plaintiffs. (*Zaragoza*, *supra*, 109 Cal.App.5th at pp. 119, 121.)

12

In the context of the three-step analysis, plaintiffs argue that their evidence of fraudulent medical records undermines Alta Bates's expert opinions and precludes the court from "rely[ing] on expert opinion testimony in granting summary judgment when the expert stated explicitly that he relied on such inaccurate records." We do not agree. Although Dr. Pappas and Somerby identified discrepancies in Holloway's medical records, plaintiffs' evidence falls far short of rendering Alta Bates's expert opinions inadmissible or otherwise insufficient to carry the moving burden. Indeed, plaintiffs did not object to any of Alta Bates's evidence introduced before the trial court, thereby waiving any objections to admissibility on appeal. (§ 437c, subd. (b)(5) ["Evidentiary objections not made . . . shall be deemed waived"].) And, while admissibility "is not dispositive" of whether a declaration is sufficient to carry the moving burden, even under a liberal construction, plaintiffs' expert declarations offer no admissible conflicting or differing opinion on causation; merely pointing out "contradictions" in the moving party's evidence does not warrant a jury trial. (*Zaragoza*, *supra*, 109 Cal.App.5th at p. 119; see also *Morales-Simental v. Genentech, Inc.* (2017) 16 Cal.App.5th 445, 460–461 [rejecting plaintiffs' argument "that contradictions in the declarations and deposition testimony . . . raise credibility questions for the jury"].)

Under the third and final step, we consider whether plaintiffs raised a triable issue of material fact that would warrant denial of the motion and determine they did not. (*Zaragoza*, *supra*, 109 Cal.App.5th at p. 118.) "Material facts are those that relate to the issues in the case as framed by the pleadings." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860.) Plaintiffs' negligence claim is based on the theory that the seizure Halloway suffered on September 6, 2024, did not cause her death; rather her

13

death was caused by "an overdose of opiate medication" after nurses improperly administered two Dilaudid injections in rapid succession at 1:00 a.m. and 1:11 a.m. on September 4. But the only expert opinion plaintiffs offered as to causation was from Somerby, who, after his review of the medical records, concluded that Holloway "suffered an adverse outcome as a result of being overdosed with Dilaudid medication" because, "[a]bsent a correction" of the MAR showing a 1:00 a.m. injection on September 4, "I have no alternative but to assume it is correct and that Ms. Holloway was overdosed with Dilaudid." However, this "assumption" and Somerby's subsequent "reasonable inference" that Holloway, "within medical probability, suffered an adverse outcome as a result of being overdosed with Dilaudid medication" was based on Somerby's stated familiarity with Alta Bates's medical record system,[8] a professed expertise to which Alta Bates's objection was "SUSTAINED as lacking foundation, and as an improper purported expert opinion, as to how the EPIC program used by Alta Bates operated during the relevant timeframe at issue in this case."

On appeal, plaintiffs do not cogently argue the objection was erroneously sustained or even provide the applicable standard of review for such rulings, thereby forfeiting any challenge to the exclusion of Somerby's opinion. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 [failure "to articulate the standard of review on appeal" is "in and of itself a potentially fatal omission"].) In any event, Somerby's opinion failed to raise a

---

[8] Somerby declared: "I am very familiar with the EPIC electronic medical record system used at Sutter Hospitals since I used it myself and I use an almost identical build of the EPIC system at Kaiser-Permanente. There are no differences between the systems that I, as a nurse, am aware of that would change my opinion of the situation around this medication administration since both organizations use the EPIC system."

14

triable issue of material fact. Somerby did not provide any information about his medical training or education generally or his experience with Dilaudid specifically; and Somerby's bare conclusion that Holloway suffered an "adverse outcome" fails to even state the specific harm (e.g., unconsciousness, seizure, respiratory failure), let alone provide any explanation about how the overdose caused that "outcome." (See *Nardizzi v. Harbor Chrysler Plymouth Sales, Inc.* (2006) 136 Cal.App.4th 1409, 1415 [a plaintiff cannot manufacture a triable issue through " 'self-serving' " expert declarations " 'devoid of any basis, explanation, or reasoning' "].) Instead, Somerby's opinion on causation was expressly based on his rejection of Zheng's testimony as "false based on my daily use and experience with the EPIC software," proffered expertise to which Alta Bates's objection was sustained. With no evidentiary support remaining for Somerby's unfounded opinion, Alta Bates's motion for summary judgment was properly granted.

As an additional matter, plaintiffs' appellate briefing cites declarations by Dr. Caplan and Dr. Bryan Young, that were filed by plaintiffs in opposition to a subsequent motion for summary judgment unrelated to the matter on appeal. Plaintiffs contend that "they may utilize such additional declaration[s] to show that summary judgment should not have been granted" because the trial court denied their continuance request to secure Dr. Caplan's declaration. We reject plaintiffs' contention for several reasons.

First, plaintiffs do not contest the denial of the continuance directly or set forth the standard of review, rather their argument is contained in two footnotes, which forfeits the issue on appeal. (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 419–420 ["An appellant cannot bury a substantive legal argument in a footnote and hope to avoid waiver of that argument" on appeal]; *Ewald v. Nationstar Mortgage, LLC, supra*, 13 Cal.App.5th at

15

p. 948.)  Second, plaintiffs do not appear to have ever requested leave to file the Young declaration in the trial court, thus they cannot tether it to their Caplan-related continuance request in an effort to rely upon it on appeal. (*American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281 ["in reviewing a summary judgment, the appellate court must consider only those facts before the trial court . . . .  [Citation.]  Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal"].)  As such, contrary to plaintiffs' assertion, these improperly cited declarations do not "show that summary judgment should not have been granted to [Alta Bates] and would not have been if they had been allowed to file an additional declaration."  Plaintiffs' attempt to challenge the trial court's exclusion of late evidence and denial of a related continuance has been forfeited.

## DISPOSITION

The judgment is affirmed.  Sutter Bay Hospitals (Alta Bates) may recover its costs of appeal.

16

                    DESAUTELS, J.


We concur:


STEWART, P. J.


MILLER, J.


*J.P., etc., et al. v. Sutter Bay Hospitals et al.* (A171454)


17