Filed 5/21/26  P. v. Ferguson CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>XAVIERA KAYLI FERGUSON,<br><br>        Defendant and Appellant. | A174468<br><br>(Contra Costa County<br>Super. Ct. No. 01-25-02412) |

Xaviera Kayli Ferguson appeals an involuntary medication order issued pursuant to Penal Code[1] section 1370.  She contends that the trial court erred by relying on the report of the psychologist who was appointed pursuant to section 1369 to evaluate her competency to stand trial and that absent this report, the trial court's ruling is not supported by substantial evidence.  We find no error and affirm the order.

## BACKGROUND

On August 15, 2025, Ferguson was charged with one count of making a false report of a bomb in violation of section 148.1, subdivision (c).  The facts underlying the charge are not relevant to this appeal.

On September 2, defense counsel declared a doubt as to Ferguson's competence to stand trial.  After a hearing in camera, the trial court found

_____

[1] All undesignated statutory references are to the Penal Code.

1

that substantial evidence supported defense counsel's doubt and suspended criminal proceedings.  The court appointed Dr. Melissa Johnson to evaluate Ferguson's competency to stand trial pursuant to section 1369.  The order also appointed Dr. Johnson to evaluate and provide an opinion to the court on "the issue of the defendant's medical decision-making capacity and medically appropriate treatment pursuant to PC § 1370 (a)(2)(B)(i)."  The order provides further that Dr. Johnson "shall specifically address whether: [¶] 1) defendant's mental disorder requires medical treatment with antipsychotic medication; [¶] 2) if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the patient will result; [¶] 3) the defendant has the capacity to make a decision regarding such medications; [¶] 4) the defendant presents, as a result of mental disorder or mental defect, a demonstrated danger of inflicting substantial physical harm on others; demonstrated danger may be based on an assessment of the defendant's present mental condition, including a consideration of past behavior of the defendant within six years prior to the time the defendant last attempted to inflict, inflicted, or threatened to inflict substantial physical harm on another, and other relevant evidence; and . . . whether defendant has a mental disorder that is typically known to benefit from antipsychotic medication."  Her report was to be completed by October 16.

In the meantime, on September 8, counsel for Contra Costa County Department of Health Services moved for a hearing for an involuntary medication order pursuant to section 2603, subdivision (c).

At the hearing on the section 2603 request, Ferguson's treating psychiatrist at the Martinez Detention Facility testified about Ferguson's diagnosis with schizophrenia and her capacity to make medical decisions

2

regarding her treatment. The psychiatrist opined that it was in Ferguson's best medical interest to take antipsychotic medication and that because Ferguson did not believe she had a mental illness, and "was unable to reason about either the illness or the possible consequences of accepting or refusing treatment," she did not have the requisite capacity to consent to treatment. The psychiatrist opined that Ferguson was a threat to herself, but not to others, and that she was gravely disabled because her "symptoms are preventing her from making decisions that are in her best interest. Or that are in preservation of her physical and mental well-being."

Following the hearing, the trial court issued an order allowing the county jail to administer antipsychotic medication to Ferguson involuntarily. The court noted that Ferguson was "in active distress due to her delusions." Her delusions were "interfering with the ability of doctors to pinpoint any actual medical concerns she may have and interfering with her ability to care for herself as testified to by the doctor." The court found that Ferguson also lacked the capacity to rationally analyze the risk and benefits of medication.

Dr. Johnson's report was submitted to the court on October 6. In addition to evaluating Ferguson's trial competency, the report concluded: "it is the recommendation of this evaluator that Ms. Ferguson receive mental health treatment while awaiting trial. Specifically, she would benefit from medication interventions and psychoeducation. [¶] **a.** Ms. Ferguson's mental disorder markedly impairs any insight she may have into the severity of her mental illness. Therefore, it is recommended that psychotropic medication be an option for mental health staff to treat Ms. Ferguson, [¶] **b.** If Ms. Ferguson's mental disorder is not treated with antipsychotic medication, it is likely that serious harm to her physical or mental health will result, [¶] **c.** Ms. Ferguson does not have the capacity to make a decision regarding

3

such medications, [and] [¶] **d.** Involuntary administration of antipsychotic medication is likely to substantially aid in the restoration of competence for Ms. Ferguson."

At a hearing on October 21, the court noted that Dr. Johnson had opined that Ferguson was not competent to stand trial and asked whether either party objected to the report. Ferguson's counsel submitted "[o]n the issue of competency." Counsel argued, however, that restoration of competency was not in the interests of justice because "her charges are as a result of her mental illness and not . . . an actual danger to others." Counsel also noted that Ferguson, despite being subject to the temporary involuntary medication order, continued to have similar symptoms. Based on Dr. Johnson's report, the trial court found Ferguson incompetent to stand trial. Over counsel's objection, the court found that restoration of competency was in the interest of justice and requested that recommendations for placement be submitted within 15 judicial days.

On November 18, the trial court committed Ferguson to the Department of State Hospitals. Over an objection by defense counsel, the trial court issued an order allowing the administration of antipsychotic medication involuntarily pursuant to section 1370, subdivision (a)(2)(B). The written order entered thereafter reads in relevant part: "Based on the report of Dr. Johnson, the court finds that defendant lacks capacity to make decisions regarding antipsychotic medication, the defendant's mental disorder requires medical treatment with antipsychotic medication, and, if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the defendant will result. Additionally, the Court approved an order pursuant to Penal Code section 2603 on September 30, 2025. The court therefore

4

authorizes the administration of antipsychotic medication as needed, including on an involuntary basis, to be administered under the direction and supervision of a licensed psychiatrist." [2]

## DISCUSSION

### I.

Individuals have a qualified right under the federal and state constitutions to refuse antipsychotic medication. (*Sell v. United States* (2003) 539 U.S. 166, 179; *In re Qawi* (2004) 32 Cal.4th 1, 14–16 (*Qawi*).) They have a "significant" constitutionally protected "liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." (*Washington v. Harper* (1990) 494 U.S. 210, 221–222.) This same interest is protected under California's right to privacy, which "clearly extends to the right to refuse antipsychotic drugs." (*Qawi*, 32 Cal.4th at p. 14.)

Pretrial detainees receive "at least the same protection" that convicted persons do: They may exercise this right unless they are dangerous to themselves or others and treatment is in their medical interest. (*People v. Lewis* (2025) 111 Cal.App.5th 1078, 1089–1090 (*Lewis*).) "Further, the government is permitted to administer antipsychotic drugs involuntarily 'to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive

---

[2] Ferguson initially filed a notice of appeal following entry of the September 30 order under section 2603. After entry of the second order under section 1370, this court granted Ferguson's request to deem her notice of appeal sufficient to obtain review of both orders.

alternatives, is necessary significantly to further important governmental trial-related interests.' " (*Id*. at p. 1090.)

These constitutional requirements are codified in section 1370, subdivision (a)(2)(B), which sets forth the factual findings necessary to support the involuntary administration of antipsychotic medication to defendants found incompetent to stand trial. (*Lewis, supra*, 111 Cal.App.5th at p. 1090.) Under this subdivision, when a defendant has been found mentally incompetent, a trial court shall then "hear and determine whether the defendant lacks the capacity to make decisions regarding the administration of antipsychotic medication" and in doing so, "shall consider opinions in the reports prepared pursuant to subdivision (b) of Section 1369, as applicable to the issue of whether the defendant lacks the capacity to make decisions regarding the administration of antipsychotic medication." (§ 1370, subd. (a)(2)(B).)

Section 1369 sets forth the procedure to be followed before issuance of an involuntary medication order. Under section 1369, subdivision (b)(2)(A), a court may direct the licensed psychologists or psychiatrists appointed to evaluate a defendant's competency to further evaluate whether treatment with antipsychotic medication is appropriate for the defendant. Under section 1369, subdivision (c)(1), "If neither party objects to any competency report submitted pursuant to subdivision (b), the court may determine the competency of the defendant based on any such competency report. The court shall also determine whether the defendant lacks the capacity to make decisions regarding the administration of antipsychotic medication." However, "[i]f either party objects to any competency report and requests a hearing, the court shall hold a hearing to determine competence and to determine whether the defendant lacks the capacity to make decisions

6

regarding the administration of antipsychotic medication, pursuant to subparagraph (B) of paragraph (2) of subdivision (a) of Section 1370." (*Id.*, subd. (c)(2).)

A court's order authorizing a state hospital to administer antipsychotic medication involuntarily to a defendant will be upheld on appeal so long as it is supported by substantial evidence. (*People v. Lameed* (2016) 247 Cal.App.4th 381, 397.)

## II.

Ferguson contends that the trial court violated her right to due process by relying on Dr. Johnson's report to support issuance of the November order under section 1370. She argues that the court's use of the report, "without allowing confrontation and cross-examination—or a legally-acceptable waiver of those rights—violated the Sixth Amendment to the Constitution." She also argues that Dr. Johnson's opinion was "nearly two months stale" and that she only consented to proceed with Dr. Johnson's evaluation of her competency to stand trial, not her medical competency.

The Attorney General argues that Ferguson forfeited any challenge to the court's reliance on the report by stipulating to its admission and by failing to challenge it in the trial court. (See *People v. Blacksher* (2011) 52 Cal.4th 769, 797–798 [where defendant submitted the question of competency on doctors' reports, he forfeited appellate claim that the trial court erred in relying on allegedly insufficient reports].) Additionally, the Attorney General notes that the Sixth Amendment does not apply to competency proceedings and that, while a party can request a hearing under section 1369, subdivision (c)(2), due process does not require an evidentiary hearing with cross-examination before an involuntary medication order may be issued. (See *Lewis, supra*, 111 Cal.App.5th at pp. 1093–1100.)

Ferguson acknowledges that Dr. Johnson's report was received without objection on October 5, but argues that her stipulation was made "only in the context of competence to stand trial, not with respect to the need for an [involuntary medication order]" and that Dr. Johnson's "examination and findings primarily concerned only the issue of competence to stand trial." She notes that her attorney objected to the issuance of an involuntary medication order at the hearing on November 18 and argues that counsel's objection was sufficient to preserve her arguments on appeal because her attorney had no opportunity to make a more specific objection "as the trial court failed to telegraph its intention on November 18 to rely on the Johnson Report for issues unrelated to competency." Finally, she argues that her failure to request a hearing under section 1369, subdivision (c)(2), does not excuse the court's failure to comply with due process before issuing the order.

Initially, Ferguson is arguably correct that her counsel's stipulation to the report at the October hearing applied only to the issue of legal competency. We reject, however, Ferguson's suggestion that Dr. Johnson was not appointed to evaluate her medical competency. The appointment order expressly requested an evaluation of both legal and medical competency and Dr. Johnson's report offered opinions as to both. More importantly, we disagree that her objection at the November hearing was sufficient to preserve the issues argued on appeal.

At the November 18 hearing, after committing Ferguson to the Department of State Hospitals, the court stated, "Doctor Johnson opined that Ms. Ferguson meets criteria for involuntary medication on capacity grounds. There is also a Penal Code 2603 order in effect" and then asked, "[a]ny argument?" Ferguson's counsel responded with no additional argument and stated only, "I would object on behalf of Ms. Ferguson."

8

"A proper objection must ' " 'fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling.' " ' " (*People v. Jackson* (2016) 1 Cal.5th 269, 328; see also *People v. Seijas* (2005) 36 Cal.4th 291, 302 [" ' defendant's failure to make a timely and specific objection' on the ground asserted on appeal makes that ground not cognizable"].)  It is impossible to know from the record what Ferguson's counsel was objecting to.  In any event, the objection did not alert the court that she was objecting to the court's reliance on Dr. Johnson's report or that she was requesting a further hearing at which to cross-examine Dr. Johnson. Certainly, nothing in the objection alerted the court to any concerns regarding when Dr. Johnson's report was prepared or whether Dr. Johnson obtained Ferguson's informed consent.[3]  Accordingly, Ferguson has forfeited her challenge to the court's reliance on Dr. Johnson's opinion that she was medically incompetent or to the sufficiency of the report to support the court's order.

In her reply brief, Ferguson suggests that her failure to request a hearing does not excuse the court's denial of her right to due process.  Citing section 1370, subdivision (a)(2)(B), she argues that "the statutory requirement that the trial court 'hear and determine' whether expert

---

[3] Any argument based on Ferguson's assertions that Dr. Johnson's opinion was stale or that Ferguson did not consent to proceed with an evaluation of her medical competency have also been forfeited by Ferguson's failure to brief the issues on appeal.  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration"].)

opinions and individual patient circumstances are 'true,' does not activate an affirmative duty by persons being subjected to an [involuntary medication order] to demand their right to confront and cross-examine. Rather, it requires something similar to what was described in *Washington v. Harper* (1990) 494 U.S. 210, 227. While *Harper* did not obligate the state to provide a[] hearing with strict evidentiary rules, the Supreme Court observed there that the procedure in question 'provide[d] for notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses.' " Ferguson makes no attempt, however, to address whether section 1369 satisfies the requirements of due process or whether on the facts of this case, she was denied due process. Rather, she argues instead that *Lewis, supra*, cited by the Attorney General, was wrongly decided and should not be followed.

In *Lewis, supra*, 111 Cal.App.5th at pages 1094, 1100, the court rejected the argument that " 'the trial court violated [his] procedural due process rights under the Fourteenth Amendment by issuing an involuntary medication order after refusing to provide him with a full evidentiary hearing, including the right to cross-examine the competency evaluator and any hearsay declarants on whose statements the evaluator relied.' " In that case, however, the defendant expressly requested an evidentiary hearing and properly preserved the court's denial for review on appeal. Here, the record establishes that Ferguson was given notice that Dr. Johnson would be evaluating her medical competency, and at the start of the hearing, the court gave notice that it intended to rely on Dr. Johnson's report to determine medical competency. Ferguson was given an opportunity to respond, and under section 1369, subdivision (c)(2), she had the right to object and request a hearing. She did not do so. Accordingly, the record establishes that

10

Ferguson was given the due process to which she contends she was entitled and provides no basis for reconsideration of the issues addressed in *Lewis*.

Because we find that the trial court properly relied on Dr. Johnson's report in issuing the November order and that Ferguson has forfeited any challenge to the sufficiency of that report to support the order, we need not consider Ferguson's additional argument that Dr. Hummos's testimony was not independently sufficient to support the order. Accordingly, we affirm the November 18 involuntary medication order.[4]

## DISPOSITION

The involuntary medication orders are affirmed.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.

---

[4] Ferguson acknowledges in her reply brief that in her opening brief she "tended to muddle her discussion" as to the two involuntary medication orders. Although she suggests that "the entire basis for issuing an [involuntary medication order] under both the [section] 2603 or [section] 1369 standards should be reviewed by this court," we see no basis for separately considering whether substantial evidence supports the October order. To the extent she challenges Dr. Hummos's testimony, it is because, as she argues, the October order "set the groundwork" for the November order and the court relied on the October order in issuing the November order. She has not argued that error with regard to issuance of the October order is otherwise prejudicial.

11